ROGERS *v.* FOWLER.

1. EVIDENCE—OPINION—ADMISSION—PREJUDICE.

Error in allowing a witness to state whether to his knowledge there was any way a fire could have caught except from a traction engine being propelled along the highway by defendants, and whether any other source of the origin of the fire was suggested at the time, is not prejudicial in the absence of testimony tending to show any other cause of the fire or that any other cause was suggested.

2. WITNESSES—REDIRECT EXAMINATION—SCOPE.

Where a defendant, on redirect examination, was asked concerning a conversation with plaintiff's attorney whether he did not want to settle the case, and he replied that he did, an objection that this was permitting an admission by one of the defendants to be used as evidence against his codefendants is untenable, where the apparent purpose of the inquiry was to repel the inference sought to be suggested by the cross-examination that some agreement had been entered into between plaintiff's counsel and the witness to relieve him at the expense of his codefendants.

3. NEGLIGENCE—FIRE—CAUSE—EVIDENCE—QUESTION FOR JURY.
   In an action for injuries by fire claimed to have been caused by
   the negligent operation of a traction engine on the highway,
   testimony that certain precautions which witness deemed suf-
   ficient were taken is not conclusive, in view of testimony that
   fire was emitted and that it could not have been emitted had
   the precautions been taken, especially where it is admitted
   that the use of the spark arrester was omitted, but the case
   is one for the jury.

4. MASTER AND SERVANT—INJURY TO THIRD PERSON—EXISTENCE
   OF RELATION—EVIDENCE—SUFFICIENCY.
   In an action for injuries by fire claimed to have been caused
   by the negligent operation of a traction engine along the
   highway, evidence examined, and *held*, that whether the
   driver of the engine was in the employ of the defendants or
   of the seller of the engine was a question for the jury.

5. TRIAL—VERDICT—AMOUNT—COMPROMISE—PREJUDICE.
   Defendant is not prejudiced by the action of the jury in return-
   ing a verdict for plaintiff awarding him a less amount as
   damages for the destruction of his property than the testi-
   mony of his witnesses shows him entitled to.

Error to Eaton; Smith, J. Submitted October 21,
1907. (Docket No. 98.) Decided March 17, 1908.

Case by Clark E. Rogers against William Fowler,
James Mott, and Frank Waterson for the negligent burn-
ing of plaintiff's barn. There was judgment for plaintiff,
and defendants Mott and Waterson bring error.
Affirmed.

*Lyman H. McCall*, for appellants.

*Huggett & McPeek*, for appellee.

MONTGOMERY, J. It is the claim of the plaintiff that on
the 21st day of April, A. D. 1904, all of the defendants were
jointly engaged in running a steam threshing engine along
a highway in the township of Chester, Eaton county,
Michigan, and past the premises of the plaintiff on section
17 of said township; that a barn was situate on the premises
belonging to the plaintiff, and within 20 feet of the high-

way; that about five tons of hay were in the barn and a straw stack stood near the barn, all of which was consumed by fire alleged to have been set by said threshing engine while passing along the highway near the barn; that the engine was out of order and repair by reason of defects in the fire box and the want of spark arresters and by reason thereof the fire was started which consumed the barn, hay and straw stack; and that the defendants were jointly liable to the plaintiff for the value of the property so destroyed by fire alleged to have been set by the passing of the engine as aforesaid. The jury before whom the case was tried in the court below, on the trial of the case, awarded the plaintiff damages to the amount of $240.

It is the claim of the defendants Mott and Waterson that they were in no way responsible for any negligence in the case, in case there was negligence, for the reason that they were not in charge of the engine and had not accepted it until delivered to them by defendant Fowler after the fire, and that they had no control over it; that there was no negligence shown in the case on the part of any of the defendants, but on the other hand the utmost care was shown to have been employed by the defendants in moving or running the engine along the highway and past the barn in question.

Error is assigned upon a ruling permitting a witness to answer the question, " Was there any way to your knowledge the fire could have caught except from that engine ? " It is claimed that the negative answer to this question could be nothing more than an expression of opinion, and that whatever inference was to have been drawn from the facts should have been drawn by the jury. Assuming this contention to be well grounded, we cannot believe that any prejudice resulted to the defendants from this testimony. There was not offered in the case any evidence tending to show that there was any other cause for the origin of this fire. No other fire was shown to have been in the vicinity, and the evidence clearly showed

that immediately after the engine passed the premises of the plaintiff, this fire was discovered, and that it was traced back to a point on the highway from which it had run to the plaintiff's property. The same may be said as to the question propounded to one of the witnesses as to whether any other source of the origin of this fire was suggested at the time. So far as disclosed, there was no other suggested even on the trial, and the bare statement of the witness that there was on this occasion no other source suggested could not have damaged the defendants.

The plaintiff produced as a witness on the trial the defendant Fowler, and, after cross-examination by the defendants, asked of conversations with the plaintiff's attorney. He was asked the question, "You wanted to settle it [referring to the case] did you not?" and he answered that he did. It is argued that this was permitting an admission by one of the defendants to be used as evidence against his codefendants. It is not apparent that this was the purpose of the inquiry. It would seem that the purpose was to show what the nature of the conference between the plaintiff's attorney and this witness was for the purpose of repelling the inference sought to be suggested by the cross-examination that some agreement had been entered into between plaintiff's counsel and the witness to relieve the witness at the expense of his codefendants.

Counsel say that the 6th assignment of error presents the most vital point in the case. The question raised under this assignment of error is whether the court should not have directed a verdict for the defendants for the reason that the plaintiff had failed to establish negligence on the part of the defendants that would render them liable. It is contended that the testimony established, if it established anything, that the defendants were entirely clear of negligence. As before stated, the allegations of negligence were that the engine was out of order or repair and that the spark arrester was not in use. The

defendant Fowler, as a witness for plaintiff, testified as follows on recross-examination:

"I considered it perfectly safe to run it down the road without a spark arrester, without drawing any load. There is another way of stopping sparks, by dropping the draft; we did that going up the hill and in going by this barn. Most generally when I go by a building with an engine I drop the draft."

On redirect examination he testified:

"We always have a spark arrester; it is to stop sparks from flying.

"Q. It is the modern way that is in general use at the present time to prevent the sparks from escaping?

"A. Most generally, we are running with heavy loads in threshing or anything the sparks fly when the damper is up. I didn't think the fire would run that day. I was running along; the flues were leaking badly. I was firing with green wood; I did not anticipate any fire at all.

"Q. You knew an engine used where there was debris and the like of that about it that it would catch and run, it was dangerous to run without a spark arrester; you know, do you not, that all engines at the present time have been for many years made with spark arresters for the purpose of preventing fires from sparks catching?

"A. Yes, sir.

"Q. You knew that was one of the appliances at the present time—universal appliances for engines to have spark arresters?

"A. I knew they most generally run and did run with the spark arrester. I knew they sometimes run without spark arresters.

"Q. And every time they do the party who runs them takes the risk in his own hands?

"A. I couldn t say; I never looked up the law.

"Q. You knew just as soon as that fire was there you got nervous—got almost sick from the fact you had been running that engine without a spark arrester?

"A. I don't know as that was it; but the fire caught and I saw the fire, it made me nervous. I am naturally nervous, anyway.

"Q. That is what alarmed you because you knew the very moment that the fire was caught you had made a mistake, was it not?

"*A.* I did not know that the engine had set the fire. I was nervous over it."

And on recross-examination:

"*Q.* When the engine is running light or empty you can drop the dampers and prevent the sparks just as well as the spark arrester or better?

"*A.* Yes, sir, I think you can, because you take it at night when you are drawing a load and you drop the damper you can hardly ever see sparks come from the engine. In passing this place we did drop the dampers.

"*Q.* You didn't open it until after you passed?

"*A.* I dropped the damper and also had my throttle shut, run very slow up the hill; I always take all precaution when I run by a building.

"*Q.* That is as effectual as a spark arrester?

"*A.* Yes, sir."

And on redirect examination:

" *Q.* Where were you when you dropped the damper?

"*A.* Right at the foot of the hill. In dropping the damper fire is hardly ever liable to escape running along.

" *Q.* It is liable when you drop the dampers, the coals are liable to come out of there?

"*A.* It closes the engine so that it throws the steam and the exhaust; put the sparks out; there is hardly no draft will take the sparks up through.

" *Q.* Would you do that,—would you run that engine at all within 30 or 40 feet of the strawstack with the driving line so near and simply dropping the damper?

"*A.* Yes, sir.

" *Q.* Would you do that with a high wind?

"*A.* We have done it many a time, with a high wind blowing toward the stack."

There was further testimony offered by plaintiff showing that there was a rise of ground where the barn was built, and that it was up hill going south and very sandy and a heavy, hard hill to go up, and was not graveled at that time.

We are not prepared to say that this testimony showed conclusively that the damper was closed before the sparks were emitted which caused the fire in question. The straw stack stood at the northeast corner of the barn and

near the road, and the engine must have been run with open damper to a point not far from in front of this straw stack from which the fire was communicated to the barn. Furthermore, the evidence that the fire was emitted, and that it could not have been emitted except with the dampers open, was some evidence to show that this precaution was omitted. See *Webster* v. *Symes*, 109 Mich. 5.

It was undisputed that one of the safety appliances designed for the very purpose of preventing the emission of sparks was omitted, and that the defendants Mott and Waterson had the spark arrester with them in the buggy following the engine. Under these circumstances, we think it was for the jury to say whether there was negligence.

It is further claimed on the part of the defendants that the testimony shows that the two defendants Mott and Waterson were in no way responsible for the engine and its management at this time. They offered testimony tending to show that they bought the engine from parties in Lansing known as the "Reeves people;" that the defendant Fowler and his partner McGormley had agreed with the Reeves peeple to deliver this engine at Lansing, and that when the defendants Mott and Waterson purchased the engine, it was agreed by the Reeves people that Fowler should deliver the engine at Charlotte; that when they went for the engine, Fowler said he could not deliver the engine at Charlotte on account of a bridge being out, and that an agreement was made between him and the defendants Mott and Waterson that he would deliver it as many miles south of his place as Charlotte was; and that while Fowler, still retaining possession of the engine, was engaged in taking it to the point agreed upon, the fire was occasioned by his use of it. It is contended that, under these circumstances, the defendants Mott and Waterson cannot be said to have been participants in the wrong.

This was the defendants' theory, but the witness Fowler, and his testimony is supported by another witness to

some extent, denies that he agreed with Mott and Waterson to deliver the engine at any other place than Charlotte, and alleges that, it being ascertained that the engine could not be taken to Charlotte, he was engaged by them to take the engine by another route and to another point, so that there was a fair question for the jury presented. This question was submitted to the jury with a charge sufficiently favorable to the defendants.

A motion for a new trial was made, based upon the claim that the jury had reached the result which they did by compromise. It is claimed that the plaintiff's testimony all tended to show damages aggregating from $345 to $395, whereas a verdict was returned for $240. It is true that the witnesses who placed an estimate upon the value of the property destroyed fixed a value of $345 to $395. But on cross-examination their testimony showed that the barn in question was very old and in a state of dilapidation, and it is quite within the range of possibility that the jury, undertaking to exercise their own judgment as to values, accepted the description of the property and fixed their own estimate of value placed upon such description rather than to accept the figures given by witnesses. Whether this was or was not proper, we do not think the defendants are damaged by a verdict for a less sum than the evidence showed the plaintiff entitled to. See *Benedict* v. *Provision Co.*, 115 Mich. 527.

The judgment will be affirmed.

GRANT, C. J., and BLAIR, OSTRANDER, and HOOKER, JJ., concurred.