PRZERADSKI v REXNORD, INCORPORATED (ON REMAND)

Docket No. 73951. Submitted September 28, 1983, at Lansing.—Decided July 16, 1984. Leave to appeal applied for.

Constance Przeradski was killed when her hair became entangled in the mechanism of a cement mixer. Her husband, Robert Przeradski, as administrator of her estate, brought a wrongful death action against Rexnord, Incorporated, the manufacturer of the mixer, alleging that Rexnord breached express and implied warranties, manufactured an inherently dangerous product, and was grossly negligent. The Oakland Circuit Court, Robert B. Webster, J., entered a judgment on a jury verdict of no cause of action and denied the plaintiff's motion for a new trial. Plaintiff appealed by leave granted. The Court of Appeals affirmed, 119 Mich App 500 (1982). Plaintiff sought leave to appeal and the Supreme Court, in lieu of granting leave to appeal, remanded to the Court of Appeals, 417 Mich 1100.19 (1983), for reconsideration in light of *Owens v Allis-Chalmers Corp,* 414 Mich 413 (1982). Now *Held:*

The rule in *Owens* that the test in determining whether a product is unreasonably dangerous is not whether the risks are obvious, but whether the risks are unreasonable in the light of foreseeable risk of injury does not apply retroactively to upset jury verdicts rendered in accordance with the law in effect when tried.

Affirmed.

R. M. MAHER, P.J., dissented. He would hold that the *Owens* rule applies retroactively. He would reverse.

OPINION OF THE COURT

1. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

Compliance by a manufacturer with governmental and industrial standards in the manufacture of a product is admissible as evidence but compliance is not conclusive as to whether the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 57 Am Jur 2d, Negligence § 66 *et seq.*

63 Am Jur 2d, Products Liability §§ 233 *et seq.,* 359 *et seq.,* 381 *et seq.,* 402.

defendant was negligent or the product was defective (MCL 600.2946; MSA 27A.2946).

2. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

The test in determining whether a product is unreasonably dangerous is not whether the risks are obvious but whether the risks are unreasonable in the light of foreseeable risk of injury; this rule, decided November 23, 1982, does not apply retroactively to upset jury verdicts rendered in accordance with the law in effect at the time of trial.

DISSENT BY R. M. MAHER, P.J.

3. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

*The test in determining whether a product is unreasonably dangerous is not whether the risks are obvious, but whether the risks are unreasonable in the light of foreseeable risk of injury; this rule, decided November 23, 1982, should apply retroactively.*

*Jaques Admiralty Law Offices, P.C.* (by *Leonard C. Jaques*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), of counsel, for plaintiff.

*Harvey, Kruse, Westen & Milan* (by *John F. Milan* and *Paul S. Koczkur*), for defendant.

ON REMAND

Before: R. M. MAHER, P.J., and BEASLEY and GRIBBS, JJ.

BEASLEY, J. This case is before the court on remand for reconsideration, 417 Mich 1100.19 (1983), in light of *Owens v Allis-Chalmers Corp.*[1] In its order, the Supreme Court denied plaintiff's motion for peremptory reversal. In accordance with the Supreme Court's order, we confine our reconsideration to *Owens.*

In the 1971 leading case of *Parsonson v Con-*

[1] 414 Mich 413; 326 NW2d 372 (1982).

*struction Equipment Co,*[2] the Supreme Court very properly indicated the need for greater emphasis upon the facts, saying:

"Typical of some appeals previously submitted to this Court, and recently more and more so, this record and the briefs received disclose that counsel both at trial and on appeal have concentrated too much upon abstractive theories and selected legal writings and too little upon 'the facts which generate the law'."

Unfortunately, this wise admonition of the high court has too often gone unheeded. Anybody, even the inexperienced and unlearned, can shuffle paper and fulminate about high-flown legal theories of liability, but only hard grinding work can dig out and ascertain the facts upon which tort results depend. It is particularly apropos in application of *Owens, supra,* to the within case, where careful consideration must be given to the facts.

In *Owens,* the Chief Justice, writing for a unanimous court, made careful references to the facts and rested the court's decision upon interpretation of the facts.

As in *Parsonson, supra,* the within case arises from the use of a very old commercial cement mixer in a way not intended by the manufacturer. In *Parsonson,* the Supreme Court affirmed a jury verdict of no cause of action, but suggested strongly that the trial judge should have directed a verdict for defendant without sending the case to the jury. Application of *Parsonson* to the somewhat similar facts of the within case makes a strong argument for the proposition that the trial judge in the within case should have directed a

[2] 386 Mich 61, 65; 191 NW2d 465 (1971), *affirming* 18 Mich App 87; 170 NW2d 479 (1969).

verdict for defendant, but we do not rest decision upon that case.

In this case, the cement mixer in question was manufactured in the late 1940's or early 1950's by defendant, Rexnord, Inc. Plaintiff called an expert witness to testify that he would have placed a protective guard over the winch-head of the cement mixer. Apparently, it was the moving parts of this winch-head in which plaintiff's decedent caught her long hair and which caused her death.

In *Owens, supra,* the Supreme Court affirmed, but for different reasons, our decision reported in 83 Mich App 74; 268 NW2d 291 (1978). In an accident witnessed by no one, plaintiff's decedent was killed when the fork-lift truck that he was driving in the course of his employment in 1970 struck a concrete-filled post and rolled over on its side, pinning him under the overhead protective guard. The collision occurred shortly after midnight when he came to work. Since there was a possibility of a heart attack, an autopsy was made which showed plaintiff's alcohol content to be 0.32%, which fact was not kept from the jury. Defendant was the manufacturer of the fork-lift truck. Plaintiff claimed negligence, breach of implied warranty and strict liability, asserting that the design of the fork-lift was defective for failing to provide some sort of factory-installed driver restraint which would have prevented his ejection during the roll over and, thus, he would not have been pinned under the overhead guard. After completion of plaintiff's proofs, the trial judge directed a verdict for defendants on the ground that plaintiff had not proved either a negligent design theory or a strict liability theory.

The Court of Appeals affirmed on different grounds, holding that:

"* * * for a plaintiff to establish a question of fact as to a manufacturer's breach of duty in design defect products liability litigation, evidence of the following must be presented:

"(1) That the particular design was not in conformity with industry design standards, design guidelines established by an authoritative voluntary association, *or* design criteria set by legislative or other governmental regulation; *or*

"(2) That the design choice of the manufacturer carries with it a *latent* risk of injury *and* the manufacturer has *not* adequately communicated the nature of that risk to potential users of the product." (Footnote omitted, emphasis in original.) 83 Mich App 74, 81 (1978).

The Supreme Court granted leave to consider the two matters upon which the Court of Appeals rationale was based and added two supplemental matters: (1) Does a manufacturer's compliance with industry or governmental standards in a products liability action preclude the jury from determining whether such conduct was reasonable? (2) Is the test for assessing a manufacturer's liability to persons injured by its product whether the risk is unreasonable and foreseeable by the manufacturer and not whether the risk is patent or obvious? (3) Did the trial court err in light of MRE 705 in holding that the testimony of plaintiff's expert witness did not create a question of fact for the jury? (4) Does a manufacturer of a vehicle have a duty to design and manufacture its product so as to eliminate any unreasonable risk of foreseeable injury to the occupants as a result of a collision for which the manufacturer may not be responsible?

In trying to prove defective or negligent design, plaintiff called one expert, an independent consulting physicist who had previously worked for General Motors. While he had little or no experience

with fork-lifts, he testified that they were just another type of vehicle, with which he had experience. His opinion was that a roll over is a foreseeable type of fork-lift accident. He thought it foreseeable that a fork-lift driver could be pinned under the overhead protective guard in the event of a roll over. The overhead protective guard is a safety device consisting of four posts and an overhead screen used for the purpose of preventing objects from falling on the driver's head. He said that some sort of driver restraint should be utilized to keep the driver from being ejected through the open sides of the fork-lift in the event of a roll over, suggesting four possible types: (1) a seatbelt, (2) a cage-type enclosure, (3) a bar like those used on carnival rides, and (4) an encapsulating seat, which would have arms that, to some extent, would restrict a driver's movements. He said the cage-type enclosure was offered by fork-lift manufacturers, including defendant but, although offered to plaintiff's employer, had not been purchased. He said that he was not aware of any law, safety regulation, standard, or policy that required or suggested the use of driver restraints on fork-lifts, nor did he know of any manufacturer who provided seatbelts or any driver restraints as standard equipment.

There was also evidence from union employees, after decedent's death, that they would not wear seatbelts if they were provided, because they considered it more dangerous to be trapped in a fork-lift during a roll over because they would not be able to jump free.

Defendant's argument for a directed verdict was that it was not enough for the expert to make his mere unsubstantiated assertion as a basis for sending the case to the jury and that there was noth-

ing in the record to show a basis for his assertion that driver restraints were needed.

The trial judge held that, while the manufacturer has a duty to design and manufacture so as to eliminate any unreasonable risk of foreseeable injury to occupants, there was no proof in this case other than the "bold assertions" of plaintiff's expert without any supporting data of any standard whatever or any showing of an unreasonable risk of foreseeable injury. Thus, he directed a verdict.

As previously indicated, on appeal we set two measures for establishing liability in *Owens, supra.* The Supreme Court said that compliance with governmental and industrial standards does not preclude a trier of fact from finding certain conduct to be negligent, citing, among other things, the historically famous statement of Judge Learned Hand in 60 F2d 737 (1932), where he pointed out that a calling may never set its own tests, however persuasive be its usages.[3] The Supreme Court also referred to MCL 600.2946; MSA 27A.2946, which provides industrial and governmental standards and makes them admissible in products liability actions.

In applying these teachings of *Owens* to the within case, we would point out at the outset that in the within case plaintiff attacks a jury verdict, while in *Owens,* on appeal the plaintiff therein was attacking a directed verdict in favor of defendant granted before the jury received the case.

Among those judges and lawyers who handle jury trials, it is a truism that often a jury verdict

---

[3] "Judge Learned Hand eloquently stated the rule when he wrote:

" 'Indeed, in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages.' *The T J Hooper,* 60 F2d 740 (CA 2, 1932)." *Owens, supra,* p 422.

solves a lot of problems, including errors, technical, procedural and otherwise. In the practical world, able and experienced trial judges prefer to err on the side of sending cases to juries rather than not. If there are presumptions or justifiable leanings, they are to affirm jury verdicts and to reverse directed verdicts that deprive litigants of their constitutionally entitled jury trials. Of course, such presumptions presuppose close questions with uncertain answers.

But, because in the within case a jury rendered a verdict after a long and well-contested trial, we will look long and hard before requiring the litigants and lawyers to try this case again before another jury.

In *Owens, supra,* the Supreme Court shared our concern over how to deal with the fact that design choices in products liability cases are "multi-faceted" or "polycentric" and that such a designation highlights the fact that the design of a product is the result of many interrelated considerations of which safety is but one. The Supreme Court went on to say that any determination of the reasonableness of the design of a product is essentially an inquiry into whether safety under a variety of conditions was given sufficient consideration.

In rejecting the analysis contained in our opinion, the Supreme Court said that obvious risks may be unreasonable risks and that there should be no departure from general negligence and breach of implied warranty principles. Holding that a focus is necessary in products liability cases, the Supreme Court said that there was a "focused question" in *Owens,* namely, whether a fork-lift was unreasonably dangerous when it failed to include a factory-installed driver restraint such as a seatbelt.

The Supreme Court then tested the directed verdict by their analysis and said:

"Our conclusion that the plaintiff did not present a prima facie case is based on the lack of evidence concerning both the magnitude of the risks involved and the reasonableness of the proposed alternative design." *Owens, supra,* 414 Mich 429.

Thus, the Supreme Court affirmed the grant of a directed verdict. Applying *Owens,* we believe the within case also presents a "focused question".

In instructing the jury, the trial judge said that plaintiff's theory rested upon two concurrent theories of liability: first, negligent design, and second, breach of implied warranty. He had defined negligent design as follows:

"When I use the word, negligence, with respect to the defendant's conduct, you will find that I will be referring to negligent design. And in that respect I mean, one, that the design claimed to be negligent was not in conformity with industry design standards or design guidelines established by an authoritative voluntary association; or two, the design choice of the manufacturer carries with it a latent or hidden risk of injury, and the manufacturer has not adequately communicated the nature of that risk to potential users of the product. It is for you to decide whether the design of the machine in this case was negligent under such circumstances."

The trial judge then proceeded to define ordinary care in the usual way, telling the jury that what a reasonably careful person would do or would not do under the existing circumstances was for them to decide. He described both parties' theories in considerable detail. He said that the

portable concrete mixer had a

"power takeoff in the shape of a pulley winch molded of cast iron and protruding out from the shell or the casing of the machine, open and exposed without shielding or guarding or covering—coverage of any kind. This made the machine hazardous according to plaintiff's contention, with the rotating winch head which always automatically revolved at the same time the mixing drum revolved because there was no declutching of the winch head separate from the revolving mixing drum."

The trial judge described plaintiff's theory as being that a

"* * * failure to place a cover or shield or guard over the apparatus, in a way which could be secured when it was not in functional use or the provision of a declutching apparatus in the alternative, constituted negligent design and a breach of the standards in existence at—at the time of manufacture."

He then summarized plaintiff's theory by saying that it was negligence in design to fail to provide a design to include a guarding or shielding or covering of the pulley winch drum so as to reasonably protect users and persons about the machine, or, in the alternative, to fail to provide a separate and distinct clutching system so as to declutch the pulley winch drum when the auxiliary equipment was not being utilized for functional purposes.

In describing plaintiff's burden of proof, the trial judge said that plaintiff had the burden of proof to show that defendant negligently designed the concrete mixer in one or more of the ways claimed by plaintiff as stated, and that this negligence was a proximate cause of the injury and death. Of course, he also made a parallel instruction with respect to alleged breach of implied warranty.

After finishing his instruction to the jury, the

trial judge asked counsel for their comments. Plaintiff's counsel said:

"*Mr. Jaques:* Well, I think you didn't put in 10.04, your Honor.

"*The Court:* What is that?

\* \* \*

*The Court:* Define it for me.

"(Short pause).

"*The Court:* Yes, I did not because I defined the—

"*Mr. Jaques (Interposing):* That's all I have, your Honor.

"*The Court (Continuing):* —negligent design and I think the duties of the defendant in that regard is sufficiently described. Do you have any further objection on that?

"*Mr. Jaques:* No, I just exception.

\* \* \*

"*Mr. Jaques:* Now, I would take exception to the giving of charge 10.03 and also the Court's failure to give charge 10.04 as requested from the standard instructions.

"In addition the plaintiff would object to taking exception to charge 15.05 and further, take exception to the editing by the Court of charge 21.01."[4]

The significance of this exchange is that the within case was tried before *Placek v Sterling Heights;*[5] there was no comparative negligence issue.

Under *Owens, supra,* and under SJI2d 25.31, a

---

[4] SJI 10.03 read:

"It was the duty of (the plaintiff) in connection with this occurrence, to use ordinary care for (his own safety) (and) (the safety of his property)."

SJI 10.04 read:

"It was the duty of (the defendant), in connection with this occurrence, to use ordinary care for the safety of (the plaintiff) (and) (plaintiff's property)."

[5] 405 Mich 638; 275 NW2d 511 (1979), *reh den* 406 Mich 1119 (1979).

trial court should instruct a jury that a defendant has a duty to use reasonable care in designing or manufacturing the product so as to eliminate *unreasonable and foreseeable* risks of harm or injury, and that a failure to do so is negligence.

In the within case, the cement mixer was manufactured around 1950. In determining liability, we look to the condition of the cement mixer as of the time it left defendant's possession and ownership. For our purposes, under *Owens* the issue in the within case would be whether the design of the cement mixer, measured by a 1950 standard of care, imposed an unreasonable and foreseeable risk of harm or injury upon users.

As previously indicated, the within case was tried *before* release by the Supreme Court of its opinion in *Owens.* Similarly, the within case was tried before adoption of SJI2d 25.31.[6] Thus, at the outset, we are confronted with the question of whether *Owens* should be applied retroactively. We would think that, under application of the usual tests for retroactivity, it would not apply.[7] The countering argument to that conclusion is that the Supreme Court decision in *Owens* is not *new law,* but rather, a correct statement of the law as it had been. This countering argument carries weight because the Court of Appeals decision in *Owens* did proceed on what was essentially a new analysis for product liability litigation. However, we do not believe it is necessary to decide this issue.

The reason for this conclusion is that the parties' proofs, the oral argument and the jury instructions, taken as a whole, did not give the jury a significantly different case to decide than the

[6] SJI2d 25.31 was a new instruction added in January, 1983.

[7] *Placek v Sterling Heights, supra,* pp 664-665.

jury would receive after a retrial under *Owens* and SJI2d.

We are satisfied that the proofs heard by the jury in this long trial are essentially the same proofs and pose largely the same issue as would be the case on retrial. Neither do we believe that the thrust of oral argument would be greatly different on retrial.

With respect to the jury instructions, on retrial the implied warranty instructions contained in SJI2d 25.21 and 25.22 are largely similar to those given in the first trial. The trial judge would be obligated to give SJI2d 25.31, which does not contain the specific industry standards aspect of the definition of negligent design given in the first trial. The general instructions regarding negligence are similar in SJI2d to those given in the first trial. The burden of proof instruction given by the trial court in the first trial differs only slightly from that in SJI2d. Viewing the instructions as a whole, we doubt that the differences engendered by the Supreme Court decision in *Owens* would cause a different result.

In summary, we believe that the within case was tried in accordance with the law, including the Standard Civil Jury Instructions as existed at the time of trial. We do not believe that the Supreme Court intended its decision in *Owens* to be applied retroactively to upset jury verdicts rendered in accordance with the law in effect when tried. And we believe that, in this long, contested trial, the jury heard all of the relevant evidence, plaintiff's theory of the case, extensive opening and closing argument by plaintiff's counsel and all of the same issues under a jury instruction differing only slightly from that which would be made on retrial if *Owens* were applied retroactively. For these

reasons, after reconsideration in the light of the Supreme Court decision in *Owens,* we affirm.

Affirmed.

GRIBBS, J., concurred.

R. M. MAHER, P.J. *(dissenting).* I respectfully dissent. The trial court instructed the jury as follows:

"When I use the word, negligence, with respect to the defendant's conduct, you will find that I will be referring to negligent design. And in that respect I mean, one, that the design claimed to be negligent was not in conformity with industry design standards or design guidelines established by an authoritative voluntary association; or two, the design choice of the manufacturer carries with it a latent or hidden risk of injury, and the manufacturer has not adequately communicated the nature of that risk to potential users of the product. It is for you to decide whether the design of the machine in this case was negligent under such circumstances. But, that is the definition of the term, negligent design, that I will be using subsequently."

This language was expressly rejected by the Supreme Court in *Owens v Allis-Chalmers Corp,* 414 Mich 413, 425; 326 NW2d 372 (1982), where the Supreme Court held that the test for determining whether a product is unreasonably dangerous is not whether the risks are obvious but whether the risks were unreasonable in light of the foreseeable injuries.

I do not agree with the majority that the damage done by this erroneous instruction was corrected by the trial court's statement of plaintiff's theory of the case or by the parties' proofs and oral argument. Even if plaintiff's theory included the possibility that negligence in design could be

predicated upon the correct standard (and I note that the language of foreseeability occurs only in the statement of plaintiff's *alternate* theory, breach of implied warranty), the jury had already been instructed that negligence in design could only be found under the incorrect standard. I do not believe that we can assume that the jury disregarded the trial court's instruction and relied on the proofs, arguments, and theory of the case instead.

Finally, I do not agree that the Supreme Court's decision in *Owens* was intended to apply prospectively only. The opinion in *Owens* notes that some *language* in an earlier case might have supported the proposition that liability does not attach when the dangers are patent and obvious, but also notes that that case relied upon another which was subsequently overruled and that the Court of Appeals had essentially limited that language to a very specific factual situation. The Supreme Court approved of that limitation. In addition, as the majority states in its opinion, the Court of Appeals decision in *Owens* put forward a new analysis for product liability litigation; prior decisions of the Court of Appeals had followed the generally accepted theory eventually adopted by the Supreme Court in its decision in *Owens.*

For these reasons, I believe that this case should be reversed and remanded to the trial court for a new trial under the correct standard of law.