Emmett FOSTER and Peggy Foster, Plaintiffs-Appellants,

v.

CATERPILLAR TRACTOR COMPANY, a California corporation and Gould, Inc., a Delaware corporation, Defendants-Appellees.

No. 81–1417.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 3, 1982.

Decided Aug. 15, 1983.

Barry P. Waldman, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Elizabeth J. Larin (argued), Detroit, Mich., for plaintiffs-appellants.

James N. Martin, Robert George (argued), Mount Clemens, Mich., for Caterpillar.

Dennis B. Cotter (argued), Detroit, Mich., for Gould.

Before ENGEL and JONES, Circuit Judges, and VAN PELT, Senior District Judge.*

---

* Hon. Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation.

PER CURIAM.

Emmett Foster and his wife appeal a judgment in favor of appellees Caterpillar Tractor Company ("Caterpillar") and Gould, Inc. ("Gould") following a jury trial. Because of the Michigan Supreme Court's subsequent and specific rejection of language in an intermediate appellate court decision upon which the trial court relied, we are obliged to reverse and remand. *Owens v. Allis-Chalmers Corp.,* 414 Mich. 413, 326 N.W.2d 372 (1982), *aff'g* (on alternate grounds) *Owens v. Allis-Chalmers Corp.,* 83 Mich.App. 74, 268 N.W.2d 291 (1978).

While in the course of his employment with Ministrelli Construction Company, appellant Foster attempted to jump start the battery of a Caterpillar 950 front-end loader. The battery exploded and severely injured Foster.

Foster and his wife brought this diversity suit in the District Court. Their complaint raised products liability claims alleging a design defect and failure to warn regarding the dangers of the battery. Gould manufactured and designed the battery in accordance with Caterpillar's specifications. Michigan law applies. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

It was undisputed at trial that the explosion most likely occurred because an external spark created during the jump starting process ignited some hydrogen gas normally found over a battery. The ensuing flame apparently was able to enter the battery through its vent caps and ignited the battery's internal gases.

An expert testifying for Gould stated that Gould was aware in 1974 or early 1975, when the battery was manufactured, that explosions could occur during the jump start procedure. He testified further that explosion-proof "flame arrestor" caps prevent external sparks from entering the battery, reducing the possibility of explosions. The Gould battery was equipped with conventional rather than explosion-proof caps.

The Fosters introduced proof that a 1969 patent for explosion-proof caps was similar in design to a cap patented in 1949. In fact, the product designed for Gould was refused a patent for such a vent cap in 1975 because the U.S. Patent Office did not view the design as novel. The Fosters also introduced proof that all 1974 General Motors automobiles produced in 1973 were equipped with Delco batteries which had explosion-proof caps. Gould was in the process of developing such caps before 1974 but did not produce them until 1976.

The Fosters' counsel made an offer of proof that their expert would testify that explosion-proof caps were available at the time the Gould battery was manufactured and sold, and that they were a reasonable safety device to protect against explosions. The district judge refused to admit this evidence, finding that a jury issue is created regarding the reasonableness of a design only where it is shown that the product did not conform to governmentally imposed standards or to the generally prevailing practice in the industry. Adhering to this holding, the district judge granted a directed verdict in favor of Gould and Caterpillar and did not instruct the jury regarding the duty to install reasonably adequate safety devices. The jury was only allowed to consider the adequacy of the warnings regarding the dangers associated with the battery, and it returned a verdict for Gould and Caterpillar.[1] The Fosters filed a Motion for a New Trial, which was denied. This appeal followed.

The district judge in refusing to submit the issue of the reasonableness of safety devices to the jury relied primarily upon *Owens v. Allis-Chalmers,* 83 Mich.App. 74, 268 N.W.2d 291 (1978). In *Owens,* a panel of the Michigan Court of Appeals indicated that a jury issue is presented only where the design choice carried a latent risk of injury which was not disclosed to the user, or

> the particular design was not in conformity with industry design standards, design guidelines established by an authoritative

---

1. No appeal was taken regarding this theory of liability.

voluntary association, or design criteria set by legislative or other governmental regulation. . . .

83 Mich.App. at 81, 268 N.W.2d 291.

The *Owens* case arguably was inconsistent with Michigan products liability law. *See, e.g., Marietta v. Cliff's Ridge, Inc.,* 385 Mich. 364, 189 N.W.2d 208 (1971); *Elsasser v. American Motors Corp.,* 81 Mich.App. 379, 265 N.W.2d 339 (1978). Any ambiguity following *Owens* has been resolved by the Michigan Supreme Court, which clearly rejected the reasoning of the Court of Appeals in *Owens v. Allis-Chalmers Corp.,* 414 Mich. 413, 422–23, 326 N.W.2d 372, 375–76 (1982), stating:

> This Court has previously held that compliance with governmental and industrial standards does not preclude a trier of fact from finding certain conduct to be negligent. The holding in *Marietta v. Cliff's Ridge, Inc.,* 385 Mich. 364, 369–370, 189 N.W.2d 208 (1971), cited with approval in *Hill v. Husky Briquetting, Inc.,* 393 Mich. 136, 223 N.W.2d 290 (1974), remains as precedent. Also see *Webster v. Symes,* 109 Mich. 1, 66 N.W. 580 (1896).

As stated in *Marietta,* 385 Mich. at 369–70, 189 N.W.2d 208:

> "The customary usage and practice of the industry is relevant evidence to be used in determining whether or not [the] standard [of reasonable care] has been met. Such usage cannot, however, be determinative of the standard."

Judge Learned Hand eloquently stated the rule when he wrote:

> "Indeed, in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages."

*The T.J. Hooper,* 60 F.2d 737, 740 (CA2, 1932).

We note that our Legislature has recently enacted a statute which provides that industrial and governmental standards are admissible in products liability actions, M.C.L. § 600.2946; M.S.A. § 27A.2946. The statute does not provide that such standards are conclusive. The defendant, in arguing that plaintiff did not present a prima facie case, does not challenge the rule that compliance with governmental and industrial standards is admissible as evidence but is not conclusive as to whether the defendant was negligent or the product was defective. *We reaffirm that position.* (emphasis added).[2] The expert's evidence regarding the reasonableness of the alternative design should therefore have been admitted.

The question then becomes whether a directed verdict was proper. We are, of course, bound by Michigan law in determining the sufficiency of the evidence. *Gold v. Nat'l Sav. Bank,* 641 F.2d 430, 434 (6th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981); *O'Neill v. Kiledjian,* 511 F.2d 511, 514 (6th Cir.1975). In Michigan, the reviewing court must consider the evidence and all legitimate inferences to be drawn from the evidence in a light most favorable to the party opposing the directed verdict. *Marietta v. Cliff's Ridge, Inc.,* 385 Mich. at 371, 189 N.W.2d at 210. "When a factual issue is raised, it must be decided by the jury, not a court." *Id.* at 372, 189 N.W.2d at 210. We find by considering the evidence which was admitted, and that which should have been admitted, that an issue of fact was created. Unlike *Owens,* evidence was available in the present case from which the jury could reasonably have considered the magnitude of the risk given the conventional design, and

---

**2.** After the Michigan Supreme Court released its decision in *Owens,* we requested supplemental briefing concerning its impact on the present case. The language cited above clearly contradicts Caterpillar's assertion that the Michigan Supreme Court disagreed only with the lower court's allocation of the burden of proof and not with its rationale. *See also Owens v. Allis-Chalmers Corp.,* 414 Mich. 413, 428, 326 N.W.2d 372, 378 (1982) ("[W]e have determined that the Court of Appeals decision does not provide appropriate standards upon which to affirm the directed verdict . . . .").

the utility and safety of using the proposed alternative design. *Owens, supra,* 414 Mich. at 429–32, 326 N.W.2d at 378–79.[3]

We recognize that Gould and Caterpillar introduced evidence which, if believed, tended to show that explosion-proof caps were not without risks. While the jury may properly consider such countervailing evidence regarding the practicality of alternate designs, the reasonableness of protective or preventative measures remains an issue to be decided by the jury after considering all of the evidence. *Elasser, supra,* 81 Mich.App. at 385–86, 265 N.W.2d 339.

Accordingly, the judgment entered by the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

3. The evidence presented by the Fosters as summarized in the statement of facts indicates that the present case is distinguishable from *Warner v. Kewanee Mach.,* 411 F.2d 1060 (6th Cir.1969) and *Gossett v. Chrysler Corp.,* 359 F.2d 84 (6th Cir.1966), both of which offered in evidence only the assertions of a single expert. Citing those cases, Gould and Caterpillar assert that they need not adopt the "ultimate" in safety and that our decision here creates such a rule as a matter of law. We agree that a manufacturer need not adopt the "ultimate" safety device. We further do not find as a matter of law that the proffered design must have been incorporated into the battery to avoid liability. We simply find that a jury issue is presented regarding whether the alternative design was reasonable, and that *Owens* refutes the notion that custom or governmental regulations are the sole measure of reasonableness. We also note that *Gossett* involved an interpretation of Ohio law and that *Warner,* although a Michigan case, relied on *Gossett* rather than on Michigan law. As there is now a definite Michigan precedent on this issue, *Owens, supra,* we are bound to follow it. See *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).