**46**

James R. Kohl, Plunkett, Cooney, Rutt, Watters, Stanczyk and Pedersen, Ernest R. Bazzana, argued, Detroit, Mich., for defendants-appellants.

Richard B. Worsham, Larry A. Smith, argued, Southfield, Mich., for plaintiff-appellee.

Before MARTIN and JONES, Circuit Judges, and HOLSCHUH, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

This is a diversity products liability action in which a jury awarded Dennis Phillips $90,000 for injuries he received when a ladder on which he was standing slipped out from underneath him. The manufac-

Dennis **PHILLIPS**, Plaintiff-Appellee,

v.

**HARDWARE WHOLESALERS, INC.,** a foreign corporation, and **R.D. Werner Company, Inc.,** a foreign corporation, jointly and severally, Defendants-Appellants.

No. 83–1804.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1985.

Decided May 15, 1985.

---

* Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

turer and wholesaler of the ladder, R.D. Werner Company and Hardware Wholesalers, Inc., respectively, appeal from the trial court's denial of a directed verdict and judgment notwithstanding the verdict. We affirm.

Phillips was injured when he fell from a ladder while removing a display at his place of employment, the Hartland Lumber Company. The evidence established that Phillips was standing on the sixth rung of the ladder, reaching to the side, when the feet of the ladder slipped on the asphalt tile floor. The extension ladder used by Phillips was fifteen feet long. At the time of the accident, the top of the ladder extended four inches above the bottom of the ceiling beam against which the ladder rested. The ladder was placed against the beam at an angle of 81½°, an angle well within the range acceptable for a ladder of that length.

Phillips' theory at trial was that Werner and Wholesalers breached an implied warranty by manufacturing and marketing a defective ladder. Specifically, Phillips claimed that the feet or "pads" on the bottom of the ladder were defective in that the design and material of the pads were inadequate to prevent the ladder from slipping on certain surfaces.

Phillips sought to prove his theory through the testimony of an expert witness, Frank Kleeman. Kleeman, a chemical and metallurgical engineer, opined that the vinyl plastic pads on the Werner ladder were defective due to inadequate slip resistance. Kleeman testified that the ladder pads, which had a ridged or saw-toothed design, did not provide sufficient contact with hard surfaces to prevent the ladder from slipping. He further testified that on a yielding surface, such as soil, the ridged design of the pad provided a very good grip because of the interlocking effect between the ridges and the soil.

Kleeman also gave testimony regarding alternatives to the pads on the Werner ladder. He stated that pads could be made with silicone carbide or aluminum oxide abrasives, such as are used on stairways. According to Kleeman, the development of such a pad was feasible from an engineering standpoint. He also noted, however, that the abrasives would cause some scratching of a tile surface. A pad that was available at the time of Phillips' accident had a sharp steel edge capable of penetrating ice. Kleeman testified that this pad could prevent slippage but would damage a tile floor. Another pad that was available at the time of the accident was made of soft rubber. This rubber pad was removable, so that the ladder could be equipped with permanent pads that are good for soil surfaces and the rubber pads, which are good for hard surfaces, could be slipped on over the permanent pads. Kleeman stated that this slip-on rubber pad would spread out and thus create more contact area than the Werner pad provided. More contact area would result in less slippage. Kleeman did not state that the rubber pads had any particular disadvantages.

Finally, Kleeman testified that a manufacturer and wholesaler of a ladder the size and quality of the Werner ladder should have foreseen that a consumer would use the ladder on a tile floor. He did not state whether a manufacturer or wholesaler should have foreseen that a ladder so used would slip and cause personal injury.

Werner and Wholesalers moved for a directed verdict at the close of plaintiff's case and moved for judgment notwithstanding the verdict after the jury returned a verdict against them. Defendants argue that the district court erred in denying these motions because: (1) Phillips did not adduce evidence of the reasonableness of the alternative designs; and (2) Phillips did not adduce evidence of the magnitude of the risks posed by the Werner ladder.

The standard for assessing a motion for judgment notwithstanding the verdict was set out in *Toth v. Yoder Company*, 749 F.2d 1190 (6th Cir.1984):

The issue raised by a motion for a judgment *n.o.v.* is whether there is sufficient evidence to raise a question of fact for the jury. This determination is one of law to be made by the trial court in the

first instance. In determining whether the evidence is sufficient, the trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–1105 (6th Cir.1978). If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. *Id.* An appellate court, when reviewing the trial court's decision, is bound by the same standard. *Morelock v. NCR Corp., supra,* 586 F.2d at 1105; *Gillham v. Admiral Corp.,* 523 F.2d [102, 109 (6th Cir.1975)].

*Toth,* 749 F.2d at 1194. Of particular significance is the warning in *Toth* that, "If reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof *or the necessary elements of his cause of action,* judgment n.o.v. for the defendant is improper." *Id.* at 7 (quoting *Cormack v. American Underwriters Corp.,* 94 Mich.App. 379, 288 N.W.2d 634 (1979)) (emphasis added).

With these principles in mind, we turn to the facts of this case. Defendants' claim that Phillips' case should not have gone to the jury is based primarily on the Michigan Supreme Court's decision in *Owens v. Allis Chalmers Corp.,* 414 Mich. 413, 326 N.W.2d 372 (1982). In *Owens* the plaintiff's husband was killed when the forklift he was driving turned over and he was pinned beneath the forklift's overhead protective guard. *Id.* at 416–17, 326 N.W.2d 372. The plaintiff's theory was that the design of the forklift was defective because it did not include a factory-installed driver restraint to prevent the driver's ejection in the event of a rollover. *Id.* at 417, 326 N.W.2d 372. Plaintiff's expert testified that four types of restraints were available that would have prevented the death, but the expert did not testify whether adoption of any of the alternative designs would have affected the safety of the driver in circumstances other than a roll-over or would have adversely affected the driver's ability to perform his job. *Id.* at 419, 430, 326 N.W.2d 372. The court concluded that the plaintiff had failed to establish a *prima facie* case that the forklift was unreasonably dangerous because "[n]either the costs nor the effects of the other restraints were established." *Id.* at 431, 326 N.W.2d 372.

The court also held that the plaintiff failed to establish a *prima facie* case because she failed to show "how likely" a rollover accident might be. *Id.* at 430, 326 N.W.2d 372. Such evidence was regarded as crucial in order to determine the "magnitude of the risks" posed by an absence of driver restraints. *Id.*

Werner and Wholesalers argue that *Owens* is dispositive of Phillips' claim. They agree that Kleeman testified that alternatives to the vinyl saw-toothed pads were feasible, but, they claim, Kleeman did not offer any evidence on the *reasonableness* of those alternatives. We have held, however, that a plaintiff may avoid a directed verdict under *Owens* by offering proof that the alternatives were in use at the time the defective product was manufactured and by presenting expert testimony that the alternatives were reasonable. *See Foster v. Caterpillar Tractor Co.,* 714 F.2d 654, 655, 656–57 (6th Cir.1983); *see also Scott v. Allen Bradley Co.,* 139 Mich.App. 665, 362 N.W.2d 734 (1985). Kleeman testified that several alternative pads, which were available at the time the Werner ladder was manufactured, were "reasonably efficient" and safe for use on tile surfaces. He testified that soft rubber pads could be used safely on hard surfaces. With respect to pads with abrasives to stop slippage, Kleeman stated that the "major disadvantage" with the pad was that it could cause scratching of the surface.

Werner and Wholesalers seize upon Kleeman's statement that, if he were designing a ladder, he would "[not] necessarily incor-

porate the alternative designs" he had described. Kleeman testified:

What I am really testifying to is that there are various types of materials that can and could be used for the pad of a safety shoe and ... they have all various advantages and disadvantages. As a designer, I would weigh all of these things and want to take considerable time and do considerable testing before I would arrive at a final design.

We do not believe that this testimony indicates that Phillips failed to present evidence necessary to avoid a directed verdict. Kleeman testified that the alternatives he proposed were available, reasonably efficient, and safe; he further described some of the disadvantages associated with the alternatives. This testimony was adequate to meet Phillips' burden of adducing evidence of the reasonableness of the alternatives. It is the province of the jury, not the expert, to weigh the advantages and disadvantages that the expert has identified. "While the jury may properly consider such countervailing evidence regarding the practicality of alternate designs, the reasonableness of protective or preventative measures remains an issue to be decided by the jury after considering all of the evidence." *Foster v. Caterpillar Tractor Co.*, 714 F.2d at 657; *see Gootee v. Colt Industries*, 712 F.2d 1057, 1064 (6th Cir. 1983). In sum, Kleeman's testimony was enough to get Phillips to the jury, whose function was to determine the reasonableness of the alternatives in light of the evidence.

We also conclude that the evidence of the magnitude of the risk was sufficient to get Phillips to the jury. Kleeman testified that it was foreseeable that the Werner ladder would be used on a tile floor and that a person falling off a ladder could suffer injury. Kleeman also presented evidence that the likelihood that the Werner ladder would slip on a tile floor was very great. Kleeman presented the results of a test which indicated that the Werner ladder did not meet the recommended safety standard for non-slippage when a man of average

weight stood on the ladder. Kleeman testified that the weight of a person standing on a ladder exerts force both vertically and horizontally. The horizontal force tends to make the ladder slip. According to Kleeman, the Werner ladder should have been able to resist slipping at a minimum of 78 pounds of horizontal force. The test conducted by Kleeman, however, demonstrated that the Werner ladder slipped at 51 pounds of horizontal force. This evidence tended to show that the Werner ladder was likely to slip quite often. Of course, it is obvious that a person standing on a ladder when it slips is likely to be injured. *Cf. Scott v. Allen Bradley Co.*, 362 N.W.2d at 738. In sum, Phillips adequately met the *Owens* requirement that the plaintiff adduce evidence of the magnitude of the risk posed by the product.

The judgment is affirmed.