951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul GROSS and Joyce Gross, Plaintiffs-Appellants,
v.
CONSOLIDATED ALUMINUM CORPORATION, Defendant-Appellee.
 No. 91-1374.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1991.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges; and ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs, Paul and Joyce Gross, appeal the district court's judgment against them following a directed verdict in this diversity products liability action under Michigan law. The sole issue is whether plaintiffs established a prima facie case for a defectively designed product which would render the directed verdict improper. For the reasons that follow, we affirm.
 
 I.
 
 2
 This products liability action was tried solely on the theory of defective design. At the commencement of the trial, plaintiffs stipulated that they were not making a claim of defective manufacture.
 
 
 3
 Plaintiff Paul Gross fractured his left arm resulting in a severe and permanently disabling injury as a result of an accident which occurred while he was painting the trim of his home on August 29, 1986. Plaintiff Paul Gross testified that he was standing on an aluminum stepladder designed and manufactured by defendant Consolidated Aluminum Corporation when the fifth rung of the ladder collapsed without warning. The ladder did not belong to plaintiffs. Rather, plaintiff Paul Gross had borrowed the ladder from his neighbor, James Niceley, who had purchased the ladder new sometime between 1976 and 1978. Mr. Niceley testified that the ladder had not been used very much and was like new when he loaned it to plaintiff Paul Gross.
 
 
 4
 Plaintiffs Paul Gross and his wife, Joyce Gross, filed their action against defendant on August 8, 1989, alleging that defendant defectively designed the ladder resulting in injury to Paul Gross. Joyce Gross made a claim for loss of consortium. A jury trial was held on February 6 and 7, 1991.
 
 
 5
 Defendant stipulated that the ladder was composed of an aluminum alloy known as 6105T5. Plaintiffs presented an expert witness in the field of the fracture of metals, Dr. David Felbeck, who testified to the following findings and opinions. Before trial he examined the ladder and discovered two basic types of fractures in the metal, overload fractures which showed deformation of the surrounding surface and fractures which exhibited less deformation and were caused by the environment and lower level stresses. Holes had been punched into the side rails of the ladder. Two of the sites containing the fractures with less deformation were found on either side of one of these holes. These fractures were intergranular fractures caused by stress corrosion cracking. A fracture is where two pieces of metal have separated, and an "intergranular fracture" is a fracture which occurs between the grains of metal.
 
 
 6
 According to Dr. Felbeck, the only possible cause of intergranular fractures in the ladder was stress corrosion cracking. He testified that stress corrosion cracking occurs as a result of three factors: time environment, and sustained local tensile stress. Tensile stress is a focused pulling or pressure on a particular point. The local tensile stress in the ladder was caused by the holes which defendant punched into the side rails of the ladder. Once stress corrosion cracking begins, the cracks gradually grow larger until sufficient stress is applied to the metal to cause a complete failure such as the collapse of the ladder in this case. In this case, the stress corrosion cracking at the punched hole sites in the side rails caused the side rails to begin to separate from the horizontal steps seriously weakening the entire ladder structure.
 
 
 7
 Dr. Felbeck testified that although he did find impact fractures in the ladder, i.e., fractures caused solely by a direct force hitting the ladder, these fractures were "secondary" to the intergranular fractures caused by stress corrosion cracking which resulted in the ultimate collapse of the ladder structure. Dr. Felbeck opined that the ladder was "very defective" due to the stress corrosion cracking and that 6105T5 alloy is so susceptible to stress corrosion cracking that it should not have been used to make this ladder. He further stated that while the ladder would not have exhibited stress corrosion cracking immediately after it was manufactured, the defective nature of the ladder was present from the time of its manufacture due to its susceptibility to stress corrosion cracking.
 
 
 8
 Dr. Felbeck further testified that there were other aluminum alloys available at the time of the ladder's manufacture which are not as prone to stress corrosion cracking as is 6105T5 alloy. He testified that drilling or reaming holes into the sides of the ladder would have caused less residual stress on the ladder than punching holes thus reducing the possibility of its collapse. Finally, Dr. Felbeck testified that he consulted various written materials and authorities regarding aluminum alloys available in the 1970s and 1980s but was unable to locate any reference to 6105T5 alloy.
 
 
 9
 Plaintiffs also presented deposition testimony of Edward Cooke, defendant's manager of engineering who designed the ladder in question, as part of plaintiffs' proof. Cooke testified in his deposition that he never investigated stress corrosion fracturing on this alloy, but that according to all the metallurgical research conducted, 6105T5 alloy is impervious to stress corrosion cracking. He stated that at the time the ladder was manufactured, more than two and one-half million 6105T5 ladders had been on the market, and no one had experienced stress corrosion cracking. He further testified that intergranular fractures of the type found in the ladder are caused by impact, such as a body falling on the ladder, and not by stress corrosion cracking. According to Cooke, he was aware at the time the ladder was manufactured that if it were to fracture, the result would be intergranular fractures in the alloy. Plaintiffs then concluded the liability portion of their case, and defendants moved for a directed verdict which the district court took under advisement.
 
 
 10
 On behalf of the defendant, Cooke testified that in the mid-70s, 6105T5 alloy was considered by the industry to be an appropriate alloy used in manufacturing ladder side rails, and, furthermore, it is still considered to be an appropriate alloy to be used in ladder side rails. While Cooke did not perform stress corrosion tests on this particular alloy, he did perform tests to determine the stability of the ladder and its ability to withstand heavy loads. Furthermore, 6105T5 alloy was well documented in industry literature during the 1970s and 1980s, but someone not familiar with this alloy may not have been able to locate it in the literature because it was listed under wrought alloys rather than fabricating alloys. The industry literature advised that this alloy's major use was for ladder rails.
 
 
 11
 At the end of defendant's proof, defendant renewed its motion for a directed verdict. The following morning, the district court granted defendant's motion for a directed verdict, specifically stating that it was granting defendant's first motion for directed verdict on the basis that plaintiff failed to prove a prima facie case for a defectively designed product. In addition, the district court noted it did not need to consider the second motion, but, nevertheless, the second motion was also well founded. This timely appeal followed.
 
 II.
 A. Standard of Review
 
 12
 The parties agree that Michigan's law is the applicable law in this case. Nevertheless, the issue of what comprises a prima facie case for a design defect in products liability cases under Michigan law is a question of law which this court must review de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221 (1991). In applying Michigan law to determine whether a trial court has properly granted a directed verdict to the defendant on the ground that plaintiff has failed to establish a prima facie case, this court must consider the facts in the light most favorable to plaintiff. Reeves v. Cincinnati, Inc., 176 Mich.App. 181, 439 N.W.2d 326 (1989), appeal denied, 434 Mich. 895 (1990); Taylor v. Wyeth Laboratories, Inc., 139 Mich.App. 389, 362 N.W.2d 293 (1984).
 
 B. The Owens-Prentis Test
 
 13
 Michigan applies a negligence theory to defectively designed product liability actions. Prentis v. Yale Mfg. Co., 421 Mich. 670, 365 N.W.2d 176, 186 (1984); Owens v. Allis-Chalmers Corp., 414 Mich. 413, 326 N.W.2d 372, 377 (1982). The general test is whether the design was unreasonably dangerous in that it created an unreasonable risk of foreseeable injury. Prentis, 365 N.W.2d at 186; Owens, 326 N.W.2d at 377. However, in Owens, the Michigan Supreme Court held that in order to establish a prima facie case for negligent design of a product, a plaintiff must present evidence on two requirements in addition to those elements commonly required for negligence such as foreseeability of the risk. A plaintiff must also present evidence concerning (1) the magnitude of the risk posed by the alleged defect, and (2) other reasonable design alternatives in order to establish a prima facie case for a negligently designed product. Owens, 326 N.W.2d at 378-79.
 
 
 14
 The district court determined that the additional requirements of Owens were applicable to the present case. In granting a directed verdict in favor of defendant, the district court held:
 
 
 15
 Neither Professor Felbeck nor any other witness has offered any testimony nor has there been any evidence presented in this matter whatsoever as to the foreseeability in 1977 of intergranular fractures caused by stress corrosion cracking of an aluminum ladder composed of alloy 6105T5 manufactured in 1977 and designed prior thereto and which ladder then allegedly failed in 1986. In fact, Professor Felbeck testified that he'd been unable to find anything in the literature in the 1970's that related to the susceptibility of this alloy to stress corrosion cracking or intergranular fractures. The record is simply devoid of any evidence whatsoever that it was reasonably foreseeable by this manufacturer in 1977 that this particular alloy might be subject to stress corrosion cracking which would lead to intergranular fractures and collapse and failure of the ladder nine years later in 1986.
 
 
 16
 Beyond that, there has been no testimony offered by the plaintiffs regarding the magnitude of the risks involved in the use of alloy 6105T5 in 1977 or in the reasonableness of any alternative design in 1977.
 
 
 17
 Plaintiffs argue that they presented evidence concerning the foreseeability of the risk, that the district court improperly applied the Owens requirements to their case, and, in any event, they did present sufficient evidence on the magnitude of the risk and the reasonableness of design alternatives to have had the case submitted to the jury.
 
 
 18
 Plaintiffs' argument that the district court erred when it applied the Owens requirements to their case will be addressed first. In Owens, plaintiff appealed the trial court's grant of a directed verdict in favor of the defendant. The plaintiff had sued the manufacturer of a fork lift for failure to provide a seat belt or other restraint to prevent the operator from being crushed if the fork lift were to roll over. In applying the general negligence test, the court held that the directed verdict was proper because the plaintiff failed to establish a prima facie case for a defective design when he did not present evidence concerning the magnitude of the risk and the reasonableness of other design alternatives. Owens, 326 N.W.2d at 378-79.
 
 
 19
 In the later case of Prentis v. Yale Manufacturing Co., the Michigan Supreme Court considered whether the trial court erred when it gave the same instructions as to liability under design defects as it did to liability under a breach of warranty theory. The trial court had instructed the jury that under both theories the plaintiff must prove that the design was unreasonably dangerous and created an unreasonable risk of foreseeable injury. The plaintiff in the Prentis case had sued the manufacturer of a fork lift for failure to include a seat or platform for operator use in the fork lift's design. The Michigan Supreme Court ultimately held that the trial court did not err in giving the same jury instructions for both theories. The Owens requirements of the magnitude of the risk and the reasonableness of design alternatives were not expressly mentioned by the Prentis court. Nevertheless, the Prentis court did specifically state it was adopting a "pure negligence risk-utility" test for defectively designed products liability actions. Prentis, 365 N.W.2d at 186.
 
 
 20
 Plaintiffs argue that Owens and its two additional requirements to establish a prima facie case of a negligently designed product apply only when the alleged defect concerns a safety device such as the safety restraint in Owens. In support of this argument, plaintiffs rely on the following language from Owens:
 
 
 21
 The factual inquiry demanded is whether a forklift is unreasonably dangerous when it fails to include a factory-installed driver restraint, such as a seat belt. Obviously, to attach a seat belt to a forklift would not require major changes in the design, utility, or costs of a forklift. When considering whether it was unreasonable not to attach a seat belt to a forklift as standard equipment, one is not confronted with the open-ended question whether another product, somewhat alike and somewhat different from the product under scrutiny, should instead have been manufactured.
 
 
 22
 326 N.W.2d at 378 (emphasis added). Therefore, plaintiffs argue that according to Prentis, where the alleged defect concerns the design of the product itself, a plaintiff need only present evidence concerning the general negligence test to establish a prima facie case. Plaintiffs further argue that since the alleged defect in the present case concerns the design of the product itself and not a safety device, they were not required to present evidence concerning the magnitude of the risk posed by 6105T5 alloy or the reasonableness of other alternative alloys to establish a prima facie case for a defectively designed product.
 
 
 23
 These arguments are incorrect. This court in Siminski v. Klein Tools, Inc., 840 F.2d 356 (6th Cir.1988), held that "Prentis and Owens, taken together, define a test for the prima facie case in Michigan design defect actions...." Id. at 358. The Siminski court then affirmed the district court's granting of a directed verdict in favor of the defendant because the plaintiff failed to present evidence "sufficient for a reasonable jury to balance the magnitude of the risk versus the feasibility of other design alternatives...." Id. In reaching this conclusion, this court recognized that in Prentis, the Michigan Supreme Court "frankly adopted" a negligence risk-utility test for defectively designed product liability actions. Id. A risk-utility test is concerned with balancing the risks of an alleged defect against the potential usefulness, safety, and cost effectiveness of alternative designs. Id. at 184-86. These are the same concerns addressed by the Owens requirement to produce evidence regarding the magnitude of the risk posed by a defect and the reasonableness of alternative designs. See Owens, 326 N.W.2d at 378-79.
 
 
 24
 Thus, Prentis sets forth the general negligence test for a defectively designed products liability action in Michigan, and Owens elaborates on the nature of proof required to establish a prima facie case under the general negligence test. As the Michigan Court of Appeals stated in Reeves v. Cincinnati, Inc., 176 Mich.App. 181, 439 N.W.2d 326 (1989), appeal denied, 434 Mich. 895 (1990):
 
 
 25
 Whether an alleged design defect is actionable under [a theory] of negligence ... is decided with reference to the risk-utility balancing test. Prentis, supra. The precise burden imposed on the plaintiff by this test was delineated by the Supreme Court in Owens v. Allis-Chalmers Corp. ...
 
 
 26
 Id. at 328.
 
 
 27
 Plaintiffs' last argument in this regard is that the Michigan Standard Jury Instructions support their view that they do not need to present evidence concerning the magnitude of the risk and the reasonableness of alternatives. The applicable instructions simply state the general negligence test without mentioning the magnitude of the risk or reasonable alternatives. Plaintiffs fail to understand that the purpose of requiring evidence on the magnitude of the risk and the reasonableness of alternatives is to assist the jury in determining whether the defendant has exercised reasonable care in designing a product Prentis, 365 N.W.2d at 184. Failure to recite these factors in the jury instructions does not mean that they are not required to be present for the jury to consider.
 
 C. Application of the Owens-Prentis Test
 
 28
 In offering evidence that the risk of injury due to an alleged defect was foreseeable, a plaintiff must present evidence that the risk was foreseeable at the time that the product was designed, not at the time of trial. Przeradski v. Rexnord, Inc., 136 Mich.App. 349, 356 N.W.2d 634 (1984); see also Reeves, 439 N.W.2d at 328; Phillips v. Hardware Wholesalers, Inc., 762 F.2d 46, 48 (6th Cir.1985).
 
 
 29
 As the district court correctly found, plaintiffs did not present any evidence to show that defendant was aware at the time the ladder was designed in the mid-70s that the ladder could eventually collapse causing injury to someone using it. Instead, at best the testimony of plaintiffs' expert indicated that based on what is now known in 1991 about the alloy, it is reasonably foreseeable that the alloy could eventually fail. In fact, plaintiffs' expert testified that he found no literature from the mid-70s referring to the alloy at all. On the other hand, the defendant's expert, Edward Cooke, the designer of the ladder, testified that the alloy was mentioned in industry literature in the 70s, and the literature indicated that this particular alloy was well suited for use in ladders. Further, as earlier stated, 6105T5 alloy is still considered by the industry to be an appropriate alloy to be used in the manufacture of ladder side rails.
 
 
 30
 Plaintiffs nevertheless assert that, based on Cooke's testimony, evidence was presented concerning the foreseeability of the risk at the time the ladder was designed. Cooke testified that 6105T5 alloy is susceptible to intergranular fractures and that he knew this when he designed the ladder. Plaintiffs' expert testified that intergranular fractures in 6105T5 alloy are caused only by stress corrosion cracking. Therefore, plaintiffs argue, the risk of injury due to metal failure caused by stress corrosion cracking was reasonably foreseeable at the time the ladder was designed.
 
 
 31
 However, plaintiffs have considered Cooke's statement out of context. As the district court and defendant note, Cooke also testified that intergranular fractures in 6105T5 alloy are caused only by direct impact to the metal, not by stress corrosion cracking due to time, environmental factors and tensile stress.
 
 
 32
 Plaintiffs argue that Cooke's testimony regarding the cause of the intergranular fractures is irrelevant to the determination of the appropriateness of a directed verdict because the evidence must be considered in the light most favorable to the plaintiffs. This argument that it is irrelevant what Cooke knows about the cause of intergranular fractures on 6105T5 alloy is incorrect.
 
 
 33
 Even assuming arguendo that intergranular fractures are caused only by stress corrosion cracking, our focus must be on whether stress corrosion cracking, which leads ultimately to metal failure, was reasonably foreseeable to defendant at the time the ladder was designed. Since defendant did not know and, based on the knowledge then available, could not have known that intergranular fractures are caused by stress corrosion cracking, then defendant could not have reasonably foreseen eventual metal failure due to stress corrosion cracking.
 
 
 34
 In connection with their argument that they did present evidence on foreseeability, plaintiffs contend that defendant negligently failed to test 6105T5 alloy for stress corrosion cracking. Plaintiffs assert that if defendant had tested the alloy for stress corrosion cracking, defendant would have foreseen its susceptibility to it. Plaintiff relies on Taylor v. Wyeth Laboratories, Inc., 139 Mich.App. 389, 362 N.W.2d 293 (1984), in which the court states:
 
 
 35
 A manufacturer's duty of reasonable care includes a duty of product inspection and testing during and after the course of manufacture as is reasonably necessary to render the product safe for its users.
 
 
 36
 Id. at 296. However, the Taylor court also stated:
 
 
 37
 As in other negligence actions, generally it is a question of fact for the jury whether a manufacturer's failure to test or inspect the product constitutes negligence. Plaintiff must show there was a danger which could have been detected and that the injury was proximately caused by the discoverable defect.
 
 
 38
 Id. at 296-97.
 
 
 39
 While defendant admits that it did not specifically test 6105T5 alloy for stress corrosion cracking, plaintiffs have not presented any evidence that at the time the ladder was designed and manufactured, the dangers, if any, of 6105T5 alloy could have been detected. Therefore, this argument fails.
 
 
 40
 Plaintiffs also argue that if indeed they must present evidence concerning the magnitude of the risk posed by metal failure in the ladder in question, they did in fact do so. Plaintiffs rely on a decision by this court in Phillips v. Hardware Wholesalers, Inc., 762 F.2d 46, 49 (6th Cir.1985), in which the court upheld a judgment in favor of the plaintiff for injury caused by a fall when defectively designed pads adhered to the bottom of a ladder slipped causing the plaintiff to fall. This court stated: "it is obvious that a person standing on a ladder when it slips is likely to be injured." 762 F.2d at 49.
 
 
 41
 However, the "magnitude of the risk" requirement encompasses two distinct considerations. Not only must a plaintiff present evidence concerning the type of injury which can occur, a plaintiff must also present evidence concerning the likelihood of that injury. Reeves, 439 N.W.2d at 329; Owens, 326 N.W.2d at 379. In Phillips, the court determined that the magnitude of the risk requirement had been met for two reasons: first, the plaintiff presented evidence concerning what would happen if the risk did occur, and, second, the plaintiff presented evidence of how likely it was that the risk would occur. According to a test completed by the plaintiff, ladders built with the defective pads slipped at "51 pounds of horizontal force. This evidence tended to show the Werner ladder was likely to slip quite often." Phillips, 762 F.2d at 49.
 
 
 42
 In the present case, plaintiffs failed to present any evidence concerning the likelihood of metal failure due to stress corrosion cracking. Plaintiffs' expert simply stated that stress corrosion cracking was dependent on time, environmental factors, and tensile stress. Accordingly, plaintiffs did not fulfill the "magnitude of the risk" requirement.
 
 
 43
 Finally, plaintiffs argue that if they are required to present evidence of reasonable alternatives, they did so. The requirement of reasonable or feasible alternatives includes presenting evidence as to the utility, safety, and cost efficiency of the alternatives. Reeves, 439 N.W.2d at 329; Owens, 326 N.W.2d at 379; see also Phillips, 762 F.2d at 48; Scott v. Allen Bradley Co., 139 Mich.App. 665, 362 N.W.2d 734, 737-38 (1984). These factors must be included in order that a trier of fact can determine the reasonableness of the alternative. Owens, 326 N.W.2d at 376-79. Plaintiffs' expert testified that other alloys were available at the time the ladder was designed and manufactured which were less susceptible to stress corrosion cracking and which would be suitable for use in a ladder. However, plaintiffs offered no evidence concerning the cost efficiency of using these alternative alloys.
 
 III.
 
 44
 For the foregoing reasons, we AFFIRM the district court's judgment in favor of defendant.
 
 
 
 *
 Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation