936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David LAKE, Plaintiff-Appellant,
v.
The FIRESTONE TIRE & RUBBER COMPANY, Defendant-Appellee.
 No. 90-1787.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1991.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and FORESTER, District Judge.*
 PER CURIAM:
 
 
 1
 This is a diversity product liability case in which plaintiff David Lake appeals the District Court's grant of summary judgment in favor of the defendant, The Firestone Tire and Rubber Company. Lake claims that Firestone is liable for negligent design and negligent failure to warn under Michigan law for injuries that Lake sustained as a result of a multi-piece truck wheel separation. For reasons that follow, we AFFIRM.
 
 I.
 
 2
 In April of 1987, plaintiff David Lake was employed by the Ann Arbor Tire Company. His primary duty was to repair truck tires. Lake had extensive experience servicing multi-piece truck wheels, including the type of three-piece wheel involved in this case. On April 9, Lake began servicing a truck tire and wheel assembly. This involved dismantling the three-piece truck wheel in order to remove the tire. Lake removed the worn-out tire, placed a new tire on the rim and reassembled the three-piece wheel. Lake then inflated the tire and wheel assembly in a safety cage. Such cages are provided because multi-piece wheels can explosively disengage if not assembled properly or if unserviceable due to wear on some or all of the component parts. Lake noticed that the pieces of the wheel assembly were not properly assembled and deflated the tire while still in the cage. He removed the tire and wheel unit, disassembled and reassembled it, then placed it back into the safety cage. Upon inflating the tire the second time Lake saw that the wheel components were still not properly connecting. As it was the end of his shift, Lake left the partially inflated tire and wheel assembly in the cage for the night.
 
 
 3
 Returning to work on the morning of April 10, 1987, David Lake resumed work on the tire and wheel. Again Lake deflated the tire, disassembled and reassembled the three-piece wheel, and placed the unit into the safety cage for inflation. After inflating the tire for the third time, Lake noticed that the wheel components were still not properly connected, although they were much closer to correct fit than in either of the previous two attempts. Rather than deflate the tire in the safety cage and repeat the disassembly/reassembly routine, Lake removed the still-inflated tire and wheel unit from the cage and laid it on its side with the misaligned wheel components facing up. Lake then dropped an eight pound sledge hammer from a distance of six to twelve inches onto the center of the wheel assembly, hoping that this would cause the wheel components to align themselves. Instead the wheel assembly explosively disengaged and injured Lake.
 
 
 4
 On May 4, 1989, Lake filed a complaint against Firestone, the wheel manufacturer, in the Circuit Court for the County of Washtenaw, Michigan. Firestone removed the action to the United States District Court on the basis of diversity of citizenship. Lake's complaint alleged that Firestone negligently designed and manufactured the multi-piece truck wheel and failed to warn the plaintiff of the danger associated with the improper assembly of the wheel components. Lake also alleged that Firestone had breached express and implied warranties by negligently designing and manufacturing the wheel at issue and by failing to provide adequate warnings.
 
 
 5
 On June 18, 1990, following ample time for discovery, the District Court granted summary judgment for Firestone. Plaintiff appeals only the District Court's decisions with respect to the claims of negligent design and failure to warn.
 
 II.
 A.
 
 6
 We review a grant of summary judgment de novo. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir.1989). Summary judgment is appropriate where, after adequate time for discovery, the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In examining the record to determine whether a genuine issue of material fact exists, the court must review all evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The applicable substantive law determines which facts are material, i.e., "essential elements" of a party's case.
 
 B.
 
 7
 Jurisdiction in this case is based upon diversity of citizenship. Therefore, in deciding the questions presented, we follow the substantive law of Michigan as declared by its legislature and supreme court. Where the Michigan Supreme Court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issues. In re Akron-Cleveland Auto Rental, Inc., 921 F.2d 659, 662 (6th Cir.1990). In addition, "we will normally treat decisions of state courts of appeals on issues of state law as authoritative absent a strong showing that the state's highest court would decide the issue differently." Id.
 
 III. Negligent Design
 A.
 
 8
 David Lake argues that the multi-piece truck wheel is negligently designed. More specifically, Lake contends that the design is defective in two ways: (1) the multi-piece wheel can come apart and cause injury and (2) the wheel design relies on the judgment of servicing technicians to determine whether a given multi-piece wheel assembly is still serviceable. See Joint App. at 18, 266-70, 280.
 
 
 9
 Under Michigan tort law a manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury. Owens v. Allis-Chalmers Corp, 414 Mich. 413, 425, 326 N.W.2d 372 (1982). In Prentis v. Yale Mfg. Co., 421 Mich. 670, 365 N.W.2d 176 (1984), the Michigan Supreme Court adopted a pure negligence, "risk-utility" test in products liability actions against manufacturers of products, where liability is predicated upon defective design. Under this test, a defectively designed product is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce. Since no product can be completely accident proof, the determination of whether a product is defectively designed ultimately involves a balancing of the likelihood of harm against the burden of taking precautions against any harm to determine whether the benefits of a challenged design outweigh the risk of injury inherent in such design. See Am.Law Prod.Liab.3d Sec. 28:12 (1987). The competing factors to be weighed under a risk-utility balancing test invite the trier of fact to consider the alternatives and risks faced by the manufacturer and to determine whether, in light of these, the manufacturer exercised reasonable care in making the design choices it made. Prentis, 421 Mich. at 688. In this case, the test for determining whether the design of the multi-piece wheel is "unreasonably dangerous" is: whether the alleged defects in the design of the product create an unreasonable risk of foreseeable injury. The plaintiff bears the burden of producing evidence and persuading the factfinder that the product embodies a defective design.
 
 
 10
 To establish a prima facie case, the plaintiff must adduce sufficient evidence on the risk-utility factors to establish a "defective" design. In Owens, the Michigan Supreme Court required that a plaintiff's prima facie case include
 
 
 11
 data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the "unreasonableness" of risks arising from [the allegedly defective design].
 
 
 12
 414 Mich. at 432; see Siminski v. Klein Tools, Inc., 840 F.2d 356, 357 (6th Cir.1988) (applying Owens rule). As this Court recognized in Siminski, "Prentis and Owens, taken together, define a test for the prima facie case in Michigan design defect actions...." 840 F.2d at 358. A plaintiff must provide "proof sufficient for a reasonable jury to balance the magnitude of the risk versus the feasibility of other design alternatives, or otherwise to weigh the 'unreasonableness' of risks arising from the decision to manufacture" a product using the challenged design. Id.
 
 
 13
 As Owens indicates, showing that a particular challenged design is "unreasonable" under risk-utility analysis normally requires providing evidence of the reasonableness of alternative designs. See Owens, 414 Mich. at 429 (plaintiff failed to present a prima facie case due to "lack of evidence concerning ... the reasonableness of the proposed alternative design"); Reeves v. Cincinnati, Inc., 176 Mich.App. 181, 186-88, 439 N.W.2d 326 (1989), app. denied, 434 Mich. 895 (1990) (plaintiff must produce evidence of the reasonableness of alternative designs).[1] Evidence that alternative designs exist and are feasible is necessary under a pure negligence risk-utility test since that test requires the factfinder to "consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made." Prentis, 421 Mich. at 688 (emphasis added); see also id. at 687 (" 'in a design defect case, the issue is whether the manufacturer properly weighed the alternatives and evaluated the trade-offs' ") (citation omitted).
 
 
 14
 In this case, the evidence provided by the plaintiff on his claim of defective design consisted of the testimony of an expert, Jack Campau, and answers to interrogatories. Campau provided no testimony regarding the reasonableness of any alternative design or designs. The only evidence suggesting an alternative design is contained in the plaintiff's answers to Firestone's interrogatories. Therein, the plaintiff opined that a single piece wheel could be used rather than a multi-piece wheel. Joint App. at 161-70. However, the plaintiff also admitted that he did not know whether a single piece wheel would be a feasible alternative to the multi-piece wheel. See Joint App. at 167-70.[2]
 
 
 15
 The rule of Owens and Prentis is that defective design cannot be proved by a mere assertion that a particular design is dangerous or that a different design would have alleviated or prevented the plaintiff's injuries.[3] The challenged design must be shown to be unreasonably dangerous. This requires presenting evidence from which a factfinder can reasonably consider both the magnitude of risk of the design in question and the relative utility and safety of the challenged design. Even if we were to hold that sufficient evidence was presented regarding the magnitude of risk involved, plaintiff's evidence was insufficient to raise a question of fact regarding the relative utility of the three-piece wheel design. Even viewing the evidence offered by David Lake in the most favorable light, which we are required to do, Lake has failed to establish the existence of a design defect, an element for which he bears the burden of proof.
 
 IV. Negligent Failure to Warn
 
 16
 Lake also alleged that Firestone was negligent in failing to warn him that a multi-piece wheel could come apart in such a dangerous fashion. In order to prevail on his failure to warn theory, Lake must prove that Firestone had a duty to warn him of the danger, that Firestone breached that duty, and that the failure to warn was the cause in fact of Lake's injury. See Warner v. General Motors Corp., 137 Mich.App. 340, 348, 357 N.W.2d 689 (1984); Muilenberg v. Upjohn Co., 115 Mich.App. 316, 330, 320 N.W.2d 358 (1982), app. denied, 418 Mich. 946 (1984). The District Court held that Firestone had no duty to warn David Lake that assembling corroded or worn out wheel components could lead to a dangerous separation or that hitting an improperly assembled, inflated tire and wheel assembly with a sledge hammer could cause the assembly to separate and cause injury. As a predicate to its conclusion that no legal duty existed, the District Court found that David Lake was a professional servicer of multi-piece truck tires who was aware of the danger of potential wheel separation.
 
 
 17
 We need not address the correctness of the District Court's conclusion whether Firestone had a duty to warn Lake. Nor need we consider the question of whether there was a breach of any such duty, i.e., whether any warnings given were adequate. Even if such a duty existed and was breached, plaintiff presented no evidence in support of the element of proximate cause; therefore, the grant of summary judgment was correct.
 
 
 18
 In order to show proximate cause in a duty to warn case, a plaintiff has the burden of proving that had an adequate warning been given, the plaintiff would have pursued a course of action to avoid or reduce the injury. See Muilenberg, 115 Mich.App. at 330. This case is similar to Spencer v. Ford Motor Co., 141 Mich.App. 356, 367 N.W.2d 393 (1985), a product liability case involving a multi-piece Firestone truck wheel which had separated. The plaintiff in Spencer alleged negligent failure to warn. The Michigan Court of Appeals held that summary judgment in Firestone's favor was appropriate because "[t]here was no evidence presented to show that a warning would have changed plaintiff's behavior and prevented his injury." Id. at 362. Likewise, in Falkner v. John E. Fetzer, Inc., 113 Mich.App. 500, 317 N.W.2d 337 (1982), the court held that a directed verdict in favor of the defendant was warranted because the "plaintiffs failed to present any evidence to show that if a proper warning had been given [the plaintiffs] would have taken precautions to prevent the injury," and therefore, proximate cause was not shown. Id. at 503. Similarly, here David Lake offered no evidence suggesting that a warning would have changed his behavior.[4]
 
 
 19
 In contrast to the absence of any evidence that a warning would have led to different behavior, in this case there was ample evidence that David Lake was aware of the very danger he claims he should have been warned about. An absence of a warning cannot be the proximate cause of a plaintiff's injury if the plaintiff already has knowledge of the danger. See Vroman v. Sears, Roebuck & Co., 387 F.2d 732, 735 (6th Cir.1967) (applying Michigan law); Belue v. Uniroyal, Inc., 114 Mich.App. 589, 598, 319 N.W.2d 369 (1982). Here the actions and testimony of David Lake himself reveals that he recognized the danger involved in his accident. See Joint App. at 196, 208-09, 233-35, 243-46, 254-55, 258-60.
 
 
 20
 Because there is a failure of proof on the essential element of proximate cause, there is no genuine issue of material fact with respect to Lake's claim of negligent failure to warn.
 
 V.
 
 21
 Accordingly, summary judgment in favor of Firestone is AFFIRMED.
 
 
 22
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 23
 Although I agree with the majority that the record in this case compels us to affirm the summary judgment in favor of Firestone, I write separately in order to address the duty to warn issue. A manufacturer has a general common law duty to warn of the dangers inherent in the use of its product. Odgers v. Ortho Pharmaceutical Corp., 609 F.Supp. 867, 872 (E.D.Mich.1985) (interpreting Michigan law). A manufacturer is liable in negligence for failure to warn users "about dangers associated with intended uses and foreseeable misuses." Ross v. Jaybird Automation, 172 Mich.App. 603, 432 N.W.2d 374, 376 (1988). In my view, the duty to warn issue in this case revolves around foreseeable misuses of multi-piece wheels. Firestone manufactured multi-piece truck wheels. Over twenty-six million multi-piece wheels were placed in service by Firestone between 1909 and 1986. The rim of the wheel which exploded and injured Lake was manufactured in 1973, and had been in service for fourteen years at the time of the accident. "The multi-piece truck wheel at issue was so rusted, corroded, and distorted on the date of the accident at issue that it could no longer function as originally designed and manufactured." Brief of Firestone at 5. The fact that Lake, by all accounts an experienced servicer of multi-piece wheels, could have caused the wheel to explode indicates to me that Firestone could have done more to inform servicepeople about the "foreseeable misuses" of wheels which have been in use for as long as fourteen years. Firestone, for its part, emphasizes that it sent safety charts to Lake's employer in 1984 and 1987, and that it "disseminated voluminous materials aimed at educating truck tire servicemen about the potential dangers[.]" Brief of Firestone at 14.
 
 
 24
 In my view, however, the extreme dangerousness of multi-piece wheels should have prompted Firestone to take extraordinary measures to be certain that the hands-on servicer is aware of all dangers. Firestone certainly was aware that the wheels were being used after dangerous levels of rust and corrosion developed. As plaintiff argues, "[Firestone] warn[ed] about this corrosion repeatedly in their literature, yet they took no steps ... to provide the serviceman with a ready guage so that he can tell without question when a wheel has become corroded so as to be unserviceable." Brief of Lake at 10. See Horen v. Coleco Industries, Inc., 169 Mich.App. 725, 731, 426 N.W.2d 794 (1988), app. granted, 437 Mich. 886, 464 N.W.2d 709 (1991) (awareness by swimmer of "vague danger" of diving into above-ground pool "would not preclude a jury from finding that a warning was nonetheless required to give full appreciation of the life threatening risks involved.").
 
 
 25
 In a ruling which allowed a victim of a multi-piece wheel accident to prove industry-wide liability, a New York State appeals court discussed theories of liability against wheel manufacturers:
 
 
 26
 [F]urther discovery may disclose an express agreement or tacit understanding among ... [the] major manufacturers of multipiece truck tire rims to prevent public awareness of the extreme propensity of all such rims to explode, and to block governmental action which would have required the manufacturers to recall those products. Among various bases of liability, plaintiff may well be able to establish that each of the manufacturers of the offending rims may have been under a postsale duty to warn.
 
 
 27
 Rastelli v. Goodyear Tire & Rubber Co., 165 A.D.2d 111, 565 N.Y.S.2d 889, 891 (1991) (emphasis in origina) (citation omitted).
 
 
 28
 Ultimately, of course, Lake's failure of proof on the proximate cause element dooms his failure to warn claim. However, I would find that Lake's accident was foreseeable as a matter of Michigan law and that Firestone should have made an effort to warn Lake of the specific dangers associated with servicing corroded and worn-out multi-piece wheels.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 It may also be possible to show the "unreasonableness" of a particular design by producing evidence that the challenged design is "not in conformity with industry design standards, design guidelines established by an authoritative voluntary association, or design criteria set by legislative or other governmental regulation." Owens v. Allis-Chalmers Corp., 83 Mich.App. 74, 81, 268 N.W.2d 291 (1978), aff'd on other grounds, 414 Mich. 413 (1982); Am.Law Prod.Liab.3d Sec. 31:3 (1987). Lake has not alleged that the design of the three-piece wheel is in nonconformity with any such standards
 
 
 [2]
 For example, when asked the cost of the suggested alternative, the plaintiff responded "Unknown." When asked which tires could be used with the suggested alternative, the plaintiff responded "Unknown." When asked whether the suggested alternative could be used with tube-type tires, the type for which multi-piece wheels are designed, the plaintiff responded "Unknown."
 
 
 [3]
 We have held that "a plaintiff may avoid a directed verdict under Owens by offering proof that the alternatives were in use at the time the [allegedly] defective product was manufactured and by presenting expert testimony that the alternatives were reasonable. See Foster v. Caterpillar Tractor Co., 714 F.2d 654, 655, 656-57 (6th Cir.1983)...." Phillips v. Hardware Wholesalers, Inc., 762 F.2d 46, 48 (6th Cir.1985). Even were we to hold that the summary judgment and directed verdict tests were identical and that such proof also satisfied Prentis, in this case David Lake has presented no expert testimony that the suggested alternative, a single piece wheel, would be a reasonable alternative
 
 
 [4]
 The only evidence on this issue was testimony by plaintiff's expert, Jack Campau, that he had no opinion whether the lack of a warning caused David Lake's accident. See Joint App. at 293-94