**Daniel GAWENDA and Audrey Gawenda, Plaintiffs,**

v.

**WERNER CO., a Pennsylvania Corporation, Defendant.**

**No. 95–71808.**

United States District Court, E.D. Michigan, Southern Division.

May 23, 1996.

Richard Worsham, Southfield, MI, for plaintiffs.

James Kohl, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This diversity product liability action comes before the court on Defendant's motion for summary judgment brought pursuant to Fed.R.Civ.P. 56. Plaintiff Daniel Gawenda, who was injured when he fell from the fourth step of an 8–foot aluminum stepladder allegedly manufactured by Defendant Werner Co., bought suit against Defendant claiming the ladder was defectively designed under theories of negligence and breach of an implied warranty. Specifically, Plaintiff claims the ladder's rear rails are too flexible. Plaintiff has not presented a prima facie case of design defect under either theory, and Defendant is entitled to summary judgment. For the reasons stated below, the court **GRANTS** Defendant's motion for summary judgment.

## I. Facts

■ On September 28, 1993, Plaintiff, an elevator repairman, climbed an 8 foot aluminum step ladder so he could inspect the motor of a freight elevator at Oshkosh Office Systems, Oshkosh, Wisconsin. The motor was housed in a cage directly adjacent to the freight elevator and maintenance required use of a ladder. Plaintiff used a ladder he found nearby. Plaintiff claims the ladder was manufactured by Defendant Werner between April 1982 and November 1985.[1] It is undisputed that the ladder was designed to support 250 pounds and was approved under both ANSI and Underwriter's Laboratory standards. Plaintiff testified the ladder appeared to be new; it had no observable deformities or abnormalities.

Plaintiff set the ladder up to the left of the caged area. He opened the ladder, locked the spreaders in place, jiggled the ladder after he opened it to make sure it was steady, made sure there was no rocking, tilting or movement of any kind, then grabbed his flashlight and started to climb the ladder. D. Gawenda Dep. at 84–85, 88, 90–91. Plaintiff testified he has used a ladder "millions of times" and learned in a safety class to make sure a ladder is level and resting on all four feet before climbing it. *Id.* at 73–74.

Plaintiff testified that after placing his right foot on the fourth step, he turned to the right to look at the motor with his flashlight

---

1. The accident ladder was discarded before Defendant had an opportunity to inspect it. This, however, is not fatal. Plaintiff alleges a design defect, therefore, the focus is on the entire line of Werner 8–foot aluminum ladders manufactured when the subject ladder was and the "loss of the particular [ladder] in question would not appear significant." *Fisher v. Kawasaki Heavy Indus., Ltd.,* 854 F.Supp. 467, 474 (E.D.Mich.1994).

at the same time he was bringing his left foot up to the fourth step. This is the last thing he remembers prior to his fall. He next remembers lying on the floor away from the fallen ladder, felt pain in the left side of his chest, and thought at first that he may have had a heart attack. *Id.* at 93–94, 96.

Plaintiff testified that before his fall there was no movement in the ladder. After the fall, he looked at the ladder and noticed that the rear rails were twisted to the left and the left rear side rail was bent in toward the front rails.

Plaintiff subsequently filed this product liability action against Defendant Werner asserting claims of design defect under theories of negligence and breach of an implied warranty.[2] Plaintiff supports his theories with testimony from his expert, Steven F. Biehl, an engineer who opines that Defendant Werner negligently designed the subject ladder with rear rails that were not rigid enough and this design defect caused the left rear rail to fail under Plaintiff's 210 pounds resulting in Plaintiff's fall and injuries.

Mr. Biehl theorizes that each of the four rails moved a little as Plaintiff climbed the ladder because they lacked rigidity. He admits that when a ladder is opened and the spreader bars locked, the legs or rails will deflect outward. *Id.* at 50. To explain how the left rear rail in the subject ladder would have deflected inward rather than out, Mr. Biehl surmises the left rear rail was likely pushed against a nearby column base. Plaintiff did not testify that he placed the ladder at or near the column base. Mr. Biehl further theorizes that as Plaintiff climbed the steps, rather than moving outward, this left rear rail deflected in toward the front rails. Finally, when Plaintiff reached the fourth step, the force of his weight and motion caused the left rear rail to collapse. This, in turn, caused the ladder to twist to the left and caused both Plaintiff and the ladder to fall.

Defendant brings this motion arguing (1) Plaintiff has not presented a prima facie case of design defect because he has not presented evidence that a safer, feasible alternative design was available when the subject ladder was designed; (2) Plaintiff's expert's opinion is inadmissible because it lacks the foundation required to establish reliability; and (3) Plaintiff's theory of causation is based upon impermissible speculation and conjecture.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "rea-

---

**2.**   Plaintiff does not assert a manufacturing defect claim or a failure to warn claim.

sonably find for either the plaintiff or the defendant." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2514.

## III. Analysis

■ Michigan law, which governs this diversity action, imposes a duty on manufacturers "to design [their] products so as to eliminate any unreasonable risk of foreseeable injury." *Prentis v. Yale Manufacturing Co.,* 421 Mich. 670, 693, 365 N.W.2d 176 (1984); *Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 425, 326 N.W.2d 372 (1982). Plaintiff alleges Defendant's design was unreasonable because the rear rails of its ladder were not sufficiently rigid and relies on his expert's opinion testimony to establish his prima facie case of design defect.

■ Because Plaintiff has not presented sufficient evidence of an available, reasonably safe and feasible alternative design, this court concludes Plaintiff has not established his prima facie case of design defect. Plaintiff is wrong when he argues that *Owens* does not apply to his design defect claims; that it is unnecessary for him to present evidence of a proposed alternative design that is available, reasonably efficient and safe; that he is not required to show that the ladder could be made safer because he has presented evidence that the ladder was not fit for its intended and foreseeable use. Plf.'s Br. at 15–17.

■ As recognized in *Prentis,* manufacturers have a duty to design their products only to eliminate *unreasonable* risks of foreseeable injury. *Prentis,* 421 Mich. at 693, 365 N.W.2d 176. Michigan courts recognize that product "[m]anufacturers are not insurers that 'in every instance and under all circumstances no injury will result from the use' of their products." *Owens,* 414 Mich. at 432, 326 N.W.2d 372 (quoting *E.I. DuPont De Nemours & Co. v. Baridon,* 73 F.2d 26 (8th Cir.1934)).

■ The Michigan Supreme Court has adopted a pure negligence, fault-based, risk-utility balancing test to give content to the duty and breach elements a plaintiff's prima facie design defect case. This is true whether plaintiff's design defect claim is based upon a theory of negligence or a theory of breach of an implied warranty. *Prentis,* 421 Mich. at 693–95, 365 N.W.2d 176. The emphasis is on the reasonableness of the manufacturer's conduct rather than simply the product. *Id.* at 684, 691, 365 N.W.2d 176. To hold the defendant manufacturer liable, a plaintiff must prove, under a risk-utility analysis, that an available, safer, alternative design should have been adopted. *Id.* Contrary to Plaintiff's position here, evidence of available, safer, feasible alternative designs are necessary to establish Plaintiff's prima facie case of design defect. *See Siminski v. Klein Tools, Inc.,* 840 F.2d 356, 358 (6th Cir.1988); *Phillips v. Hardware Wholesalers, Inc.,* 762 F.2d 46 (6th Cir.1985) (plaintiff's expert's testimony that slip-on removable rubber pads on ladder's feet were an available, reasonably feasible and safe alternative to defendant manufacturer's design was sufficient to allow case to go to the jury); *Fisher,* 854 F.Supp. at 470–472; *Reeves v. Cincinnati, Inc.,* 176 Mich.App. 181, 187–88, 439 N.W.2d 326 (1989); *Petto v. The Raymond Corp.,* 171 Mich.App. 688, 695, 431 N.W.2d 44 (1988).

■ The Court recently reaffirmed these principles in *Gregory v. Cincinnati, Inc.,* 450 Mich. 1, 538 N.W.2d 325 (1995). It observed that, under Michigan law, breach of implied warranty and negligent design claims merge into one and "the dispositive focus is on the manufacturer's conduct, not just the product." *Id.* at 13, 538 N.W.2d at 329. Plaintiff's burden under both theories is to establish that the manufacturer's design choice "renders the product defective, i.e., whether a risk-utility analysis favored an available safer alternative." *Id.* (citing *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984)).

■ *Owens* is the seminal case where the Michigan Supreme Court enunciated what is required for a plaintiff to establish his prima facie case of design defect. Plaintiff is required to present:

data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise con-

cerning the "unreasonableness" of risks arising from [the alleged defect].

*Id.* at 431–32, 326 N.W.2d 372. If a plaintiff does not present sufficient evidence concerning both the magnitude of the risk involved with the defendant's allegedly defective design and the reasonableness of plaintiff's proposed alternative designs, he has not established his prima facie case and the defendant manufacturer is entitled to judgment as a matter of law. *Fisher v. Kawasaki Heavy Industries, Inc.,* 854 F.Supp. 467, 469 (E.D.Mich.1994). *Accord Reeves v. Cincinnati, Inc.,* 176 Mich.App. 181, 187–88, 439 N.W.2d 326 (1989). The *Owens* Court further clarified that absent evidence of how likely similar injuries are to occur, "an examination of the effects of any proposed alternative design must bear a heavy burden in determining whether the chosen design was unreasonably dangerous." *Owens,* 414 Mich. at 430, 326 N.W.2d 372.

Plaintiff has not met his burden here. He has not presented evidence that would allow a reasonable jury to balance the magnitude of the risk of Defendant's allegedly defective stepladder design versus the feasibility of other available design alternatives.

Plaintiff's expert opines that the rear rails should have been designed to meet standards set forth in the Aluminum Association Specifications Manual. He renders this opinion despite his admissions that: (1) these standards apply to aluminum used in bridges and buildings but have not been applied to stepladders; (2) stepladders are evaluated under ANSI and Underwriters Laboratory standards and Defendant's stepladder was approved under both those standards; (3) it is necessary to know the type or grade of aluminum used in a product to correctly apply the Aluminum Association standards he advocates, yet he did not know the type of aluminum used in Defendant's stepladder (Dep. at 91–92, 128); (4) he had not developed an alternative design of the stepladder using these Aluminum Association standards and had done no testing to determine the feasibility of any alternative design using the Aluminum Association Specifications Manual (Dep. at 166).

Moreover, Plaintiff's expert could not identify a single ladder manufacturer that used the Aluminum Association standards he advocated, or one that had an aluminum stepladder with more rigid rear rails than that manufactured by Defendant Werner (Dep. at 137). Accordingly, he was unable to present evidence that he had tested other stepladder designs to ascertain whether they provided safer, feasible, alternatives to Defendant's allegedly defective design.

Furthermore, despite Plaintiff's expert testimony that the 22–foot "Little Giant" combination extension and stepladder that he owned was a feasible, safer alternative design, he had not tested or otherwise accounted for the obvious differences in the ladders. He presented no evidence that the combination ladder, which was manufactured at least two years after Defendant's stepladder, was an available alternative. He did not perform any tests regarding the safety, utility or overall feasibility of using this combination ladder as opposed to the 8–ft. Werner stepladder. Finally, Plaintiff's expert was unable to identify a single incident where a similar rear rail failure had occurred.

Plaintiff is wrong when he argues "[i]t is absolutely unnecessary to show an alternative design" and "[t]he fact that the subject ladder did not support [Plaintiff]'s weight, is prima facie evidence that the ladder … is defective." Plf.'s Br. at 16. As the Sixth Circuit observed in *Siminski,* "[i]n order to go to the jury, some proof was necessary to show that making a [stepladder with the degree of rigidity Plaintiff challenges] was negligent." *Siminski,* 840 F.2d at 358. To conclude the defendant manufacturer was negligent, it is necessary to present sufficient evidence that a safer alternative design was available at the time it manufactured its product.

As the *Fisher* court recognized, "the mere assertion by an expert that a proposed alternative would have been 'safer' is insufficient to create a question of fact as to whether or not the chosen design was 'defective'" and an expert's "simple reference to alternative designs, without any evidence of the feasibility of the designs is not sufficient, as a matter of law, to invite the trier of fact" to

determine whether the manufacturer exercised reasonable care in making the design choice it made. *Fisher*, 854 F.Supp. at 471–72.

This court concludes Plaintiff has not presented evidence sufficient to establish his prima facie case of design defect. Accordingly, Defendant is entitled to judgment as a matter of law.[3]

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED.**

### *JUDGMENT*

The Court having reviewed the pleadings in this matter and being fully advised in the premises;

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's motion for summary judgment is hereby GRANTED and Plaintiffs' claims against Werner Co. are hereby DISMISSED with prejudice.

SO ORDERED.

---

**3.** In light of this court's ruling, it is unnecessary to address Defendant Werner's additional arguments regarding causation and the inadmissibility of Plaintiff's expert's testimony for lack of reliability under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).