NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0749n.06
Filed: August 25, 2005

No. 04-1699

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MONICA MILLER,

      Plaintiff-Appellant,

v.

INGERSOLL-RAND COMPANY,
a New Jersey corporation, and
INGERSOLL-RAND ZIMMERMAN
HANDLING, an entity of unknown origin,

      Defendants-Appellees.

                                  /

On Appeal from the United
States District Court for the Eastern
District of Michigan

BEFORE:    RYAN, MOORE, and COOK, Circuit Judges.

      RYAN, Circuit Judge.      The district court granted summary judgment in favor of the defendant, Ingersoll-Rand Company, in this diversity based product liability action alleging defective design, breach of implied warranty, and negligent failure to warn, and the plaintiff, Monica Miller, now appeals. For the following reasons, we will affirm.

**I.**

**A.**

      Miller is a full-time employee at the Visteon Sterling Axle Plant in Sterling Heights, Michigan. On March 18, 2001, Miller was working in Department 97, an area at the plant designated for manufacturing and assembling rear axles for Ford Explorer sport utility vehicles. Miller and a co-employee, Mohamad Sobh, were working together to remove and

replace defective sensors on a group of "carriers." A carrier is a heavy portion of the rear axle where the components of the axle assembly attach to each other. Sobh operated a hoist which lifted the carriers, flipped them over, and positioned them in what is called a "dunnage," a hard plastic container used to hold the carriers. Once the carrier was secure in the dunnage, Miller was responsible for removing and replacing the defective sensors. After the repair was made, Sobh would use the hoist to lift the carrier out of the dunnage, deposit it elsewhere, and repeat the procedure with another carrier. At one point, Sobh lowered a carrier into position such that it was not resting properly in the dunnage. As Miller pushed on the carrier to get it to fall into place, the tip of her right middle finger was "pinched" and severed.

The facts surrounding Miller's injury are in dispute. During her deposition, Miller could not recall exactly where her finger had been pinched. She remembered placing her hand on the middle of the carrier immediately before the injury occurred, but could not recall putting her hand near the hoist itself. Miller nevertheless testified that she "just kn[e]w it was the hoist" that pinched her finger, because, although she did not see the hoist move, she was not able to remove her finger until Sobh unclamped the jaws of the hoist. However, Sobh testified that, at the time of Miller's injury, he was readying another carrier to be placed into the dunnage, was not operating the hoist, and was unaware that anything was amiss until he saw Miller running away. Sobh also testified that he did not unclamp the jaws of the hoist to help Miller remove her finger.

Miller alleged that the hoist involved in her injury was manufactured by the defendant, Ingersoll-Rand. At the time of Miller's injury, there were over 600 hoists in use at Visteon. Of these, only four were manufactured by Ingersoll-Rand. Using specifications

provided by Visteon, Ingersoll-Rand had manufactured the four hoists for Visteon to be used as assembly line components to maneuver carriers to and from test fixtures.

Several deposition witnesses testified that the hoists manufactured by Ingersoll-Rand had been modified after they were received by Visteon. Kathryn Baker, an Ingersoll-Rand employee, testified that she worked directly with Visteon regarding the manufacture of the four hoists in the Sterling Heights plant. Baker noticed during a visit to the plant in 2000 that the "center of gravity" feature, a safety device used to ensure that the hoist and its load remained balanced, had been disabled. Upon examining photographs of the hoists, Baker and another Ingersoll-Rand employee, Benjamin Pauzus, testified that the hoists appeared to have been modified.

Ingersoll-Rand also submitted evidence in support of its contention that Miller was not using the hoist according to its intended purpose. A Sterling Plant Investigation Form indicates that Miller was misusing the hoist. The report notes that Miller was "improperly operating equipment" and that "employee took unsafe position." Robert Shore, a former independent contractor who worked at Visteon, testified that the hoist should not have been used as a workbench to make repairs to a sensor. Shore testified that, under normal procedure, the hoist is used to lower the carrier into a fixture, whereupon the jaws of the hoist are released and only then may repair work begin. Shore also testified that the hoist in question was designed such that a single operator should not be able to touch the jaws of the hoist while being used and that a second "person ain't supposed to be there."

To counter this evidence, Miller submitted an affidavit from her proffered expert, Irving W. Rozian, an engineer, who declared that Miller's "injury occurred when she was

attempting to position the clamp which was a necessary part of every operation for which the machine was intended."

**B.**

On October 2, 2002, Miller filed a complaint against Ingersoll-Rand in Macomb County Circuit Court in Michigan, alleging defective design, breach of implied warranty, and negligent failure to warn. Thereafter, Ingersoll-Rand removed the case to the United States District Court for the Eastern District of Michigan. After a period of discovery, Ingersoll-Rand moved for summary judgment, and later amended its motion. After conducting a hearing, the district court granted Ingersoll-Rand's motion in a ruling from the bench. The court explained that summary judgment was appropriate "particularly because there [was] no testimony that the machine actually caused any injury." The court identified other reasons for granting the motion, noting that the hoist "was sold to . . . a sophisticated user," "[t]he machine was not being used for the purpose intended," the hoist was "altered by the owner," and that there was "no evidence of [a] defect." Miller appealed.

**II.**

This court reviews de novo a district court's decision to grant a motion for summary judgment. Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 501 (6th Cir. 2003). "When there is a motion for summary judgment in a diversity case, the provisions of [Federal] Rule [of Civil Procedure] 56 control its determination. The fact that the Michigan procedure for summary judgment has different requirements from Rule 56 is immaterial." Reid v. Sears, Roebuck & Co., 790 F.2d 453, 459 (6th Cir. 1986) (internal citation omitted). Summary judgment is appropriate under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

**III.**

We first consider Miller's claim that the hoist manufactured by Ingersoll-Rand was defectively designed. In doing so, we need not decide whether the district court erred in determining that there was no evidence that the hoist caused Miller's injury. Neither must we decide whether the district court erred in concluding that Ingersoll-Rand is precluded from liability due to Miller's "misuse" of the hoist, Mich. Comp. Laws Ann. § 600.2947(2), or because Miller's finger injury was attributable to Visteon's "alteration" of the hoist, Mich. Comp. Laws Ann. § 600.2947(1). Rather, we need only address the district court's conclusion that Miller failed to present evidence of a design defect because that ruling is dispositive of Miller's claim.

Miller argues that the hoist manufactured by Ingersoll-Rand was defective because it was designed to carry a part that was heavier than any other part for which an Ingersoll-Rand hoist had been designed. Miller principally relies on the affidavit of her proffered expert, Rozian, who opined that: (1) the hoist was not reasonably safe for one or two users; (2) the hoist should have been equipped with a positive brake; (3) the jaws of the hoist could not be guided into place without the assistance of a second person; and (4) the hoist should have been equipped with safety guarding.

Because jurisdiction in this case is based on diversity of citizenship, the substantive law of the forum state of Michigan applies. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Michigan Supreme Court has adopted a "pure negligence, risk-utility test" to determine whether a manufacturer should be held liable for a defectively designed product.

Prentis v. Yale Mfg. Co., 365 N.W.2d 176, 186 (Mich. 1984).  Under Michigan tort law, "[a] manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury."  Id.  To establish that a manufacturer breached its duty to design a reasonably safe product, a plaintiff must prove that the product was "defective."  Id. at 182. "[T]he element of defect is established by proofs that the manufacturer failed to do what a reasonably prudent person would do or did what a reasonably prudent person would not have done under the circumstances."  Dooms v. Stewart Bolling & Co., 241 N.W.2d 738, 743 (Mich. Ct. App. 1976).  Specifically, this entails "a risk-utility balancing test that considers alternative safer designs and the accompanying risk pared against the risk and utility of the design chosen."  Gregory v. Cincinnati Inc., 538 N.W.2d 325, 329 (Mich. 1995).

> The competing factors to be weighed under a risk-utility balancing test invite the trier of fact to consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made.

Prentis, 365 N.W.2d at 184.  In addition to proving that the manufacturer breached its duty of care, "a plaintiff must show that the manufacturer's negligence was the proximate cause of the plaintiff's injuries."  Skinner v. Square D Co., 516 N.W.2d 475, 479 (Mich. 1994).

In Owens v. Allis-Chalmers Corp., 326 N.W.2d 372, 379 (Mich. 1982), the Michigan Supreme Court explained that a plaintiff's prima facie case of design defect must include

> data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the "unreasonableness" of risks arising from [the allegedly defective design].

This court has held that Prentis and Owens establish "a test for the prima facie case in Michigan design defect actions" which requires "proof sufficient for a reasonable jury to balance the magnitude of the risk versus the feasibility of other design alternatives, or

otherwise to weigh the 'unreasonableness' of risks arising from the [design chosen]." Siminski v. Klein Tools, Inc., 840 F.2d 356, 358 (6th Cir. 1988).

Having reviewed the pretrial record and the parties' briefs, we conclude that Miller failed to establish a prima facie case of a design defect because there is a "lack of evidence concerning both the magnitude of the risks involved and the reasonableness of the proposed alternative design[s]." Owens, 326 N.W.2d at 378-79. First, there is no evidence, in Rozian's affidavit or elsewhere, indicating that the type of injury suffered by Miller was a likely and foreseeable risk such that the failure to equip the hoist with the safety devices recommended by Rozian was unreasonable. There was no evidence that the hoist in question had injured others prior to or after Miller's injury, or that Visteon employees had complained about its unsafe operation. Visteon did not find it necessary to add any safety features to the hoist prior to the accident. There is nothing in the record to substantiate Rozian's assertion that the hoist regularly required a second person to position the jaws by hand. Thus, "[a]lthough from the testimony of plaintiff's expert one might infer that . . . [Miller's injuries] . . . were foreseeable, neither his testimony nor any other evidence on the record gave any indication how likely such an event might be." Id. at 379. Moreover, the mere fact that the hoist was designed to carry a substantially heavier part, standing alone, gives no indication whether the design of the product was unreasonably dangerous or likely to cause injury.

Second, Miller offered no evidence demonstrating that Rozian's proposed alternative safety devices would have been effective as a reasonable means of minimizing any foreseeable risk of danger arising from the hoist's operation. She offered no evidence as to whether the proposed alternative designs would have been technically and economically

feasible to Ingersoll-Rand at the time of the incident. For example, there is nothing in Rozian's affidavit detailing the costs of adding a positive break and safety guarding, and there is no indication that the hoist could have been operated effectively and safely with such safety features attached. Indeed, Visteon's records indicate that, after Miller's injury, Visteon attempted to equip the hoist with protective guarding, but ultimately determined that "guarding [was] not feasible on the movable hoist 'ears.'" Thus, the only evidence in the record indicates that protective guarding was not feasible. Accordingly, because Miller failed to present sufficient evidence to create a prima facie case of a design defect under Michigan law, the district court did not err in dismissing her claim.

**IV.**

Miller also contends that Ingersoll-Rand is liable under a breach of implied warranty theory. "When proceeding under a theory of implied warranty, a design defect is established by proof that the product is not reasonably safe for the uses intended, anticipated, or reasonably foreseeable." Prentis, 365 N.W.2d at 186. Negligent design and breach of implied warranty are distinct theories of recovery. A claim of negligent design "generally focuses on the defendant's conduct, requiring a showing that it was unreasonable, while warranty generally focuses upon the fitness of the product, irrespective of the defendant's conduct." Id. Nevertheless, "in an action against the manufacturer of a product based upon an alleged defect in its design, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements." Id. (internal quotation marks and citation omitted). "[T]he only time the distinction between implied warranty and negligence may have any significance in design defect cases, is in

determining the liability of a seller who is not also the manufacturer of a product." Id. at n.30.

In this case, the failure of Miller's design defect claim necessarily dooms her implied warranty claim. Miller, as we have explained, has failed to present sufficient proof that Ingersoll-Rand breached its duty to design a reasonably safe product. Further, the hoist in question was manufactured and sold by Ingersoll-Rand, so that, in this instance, the breach of warranty and design defect claims "involve identical evidence and require proof of exactly the same elements." Id. at 186. "Thus, . . . it is inconceivable that a jury could determine that [Ingersoll-Rand] had not breached its duty of reasonable care and at the same time find that the product was not reasonably safe for its reasonably foreseeable uses." Id. at 186-87. The district court properly granted summary judgment with respect to Miller's breach of warranty claim.

## V.

Finally, we turn to Miller's claim that Ingersoll-Rand is liable for a negligent failure to warn. Although Miller's design defect and implied warranty claims were properly dismissed, a negligent failure to warn "renders the product defective even if the design chosen does not render the product defective." Gregory, 538 N.W.2d at 329. A duty to warn is imposed on a manufacturer if: (1) the manufacturer had actual or constructive knowledge of the claimed danger; (2) the manufacturer had no reason to believe those for whose use the product is supplied will realize its dangerous condition; and (3) the manufacturer failed to exercise reasonable care to inform users of the product's dangerous condition or of the facts which make it likely to be dangerous. Glittenberg v. Doughboy Recreational Indus., 491 N.W.2d 208, 212-13 (Mich. 1992). A manufacturer has "a duty

to warn purchasers or users of dangers associated with the intended use or reasonably foreseeable misuse of their products." Id. at 211.

Apparently, the district court dismissed Miller's failure to warn claim because it concluded that Ingersoll-Rand had sold the hoist to a "sophisticated user." Under Michigan law, "a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." Mich. Comp. Laws Ann. § 600.2947(4). A sophisticated user is "a person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect." Mich. Comp. Laws Ann. § 600.2945(j).

On appeal, Miller has virtually abandoned her negligent failure to warn claim. She summarily argues in her brief that each of the district court's "rulings was contrary to the facts and proof submitted," a statement which implicitly includes a challenge to the district court's finding that the hoist was sold to a sophisticated user. In any event, we find it unnecessary to address the correctness of the district court's ruling because, even assuming that Ingersoll-Rand had a duty to warn and failed to do so, Miller has failed to present any evidence indicating that such negligence was the proximate cause of her injury. A plaintiff has the burden of proving that the defendant's failure to warn was the proximate cause of his injury, a showing which typically is established by proof "that the plaintiff would have altered his behavior in response to a warning." Allen v. Owens-Corning Fiberglas Corp., 571 N.W.2d 530, 535 (Mich. Ct. App. 1997). In Falkner v. John E. Fetzer, Inc., 317 N.W.2d 337, 339 (Mich. Ct. App. 1982), the court held that a directed verdict entered in favor of the defendant was proper because the "plaintiffs failed to present any

evidence to show that if a proper warning had been given [the injured plaintiff] would have taken precautions to prevent the injury," and thus, did not meet their burden to prove proximate causation.  Similarly, Miller presented no evidence in the district court or on appeal indicating that she would have altered the course of her behavior in response to a warning.  For this reason, Miller's negligent failure to warn claim was properly dismissed by the district court.

**VI.**

For the foregoing reasons, the district court's grant of summary judgment in favor of Ingersoll-Rand is **AFFIRMED**.